WILLIAM H. ADAMS & others *vs.* BERTHA H. WHITMORE.

Barnstable.     November 20, 1922. — May 23, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, & CARROLL, JJ.

*Undue Influence. Fraud. Equity Jurisdiction,* To set aside conveyance procured by undue influence.

A suit in equity may be maintained by the heirs at law of a man to set aside a conveyance to the defendant, a woman, of land worth about $2,500, where it appears that the man, about four and a half months before his death, when more than eighty years of age, infirm, blind, weakened mentally and living alone, was contemplating going to a Boston hospital for an operation to remove cataracts from his eyes, whereupon the defendant represented to him that, if the doctors and officials of the hospital became aware that he possessed property and money, he would be obliged to pay excessive charges for the operation upon his eyes and for his care and treatment, and induced him to make the conveyance to her upon her suggestion that it would be a wise precaution on his part in order to avoid such overcharges and upon her representation that, when he returned from the hospital, his property would be reconveyed to him; such a conveyance having been procured by undue influence although the man could not be found to have been too weak in mind to execute the deed with understanding of its meaning, effect and consequences, and no fiduciary relation between him and the defendant appeared.

BILL IN EQUITY, filed in the Superior Court on April 5, 1920, by the heirs at law of Isaiah M. Adams, late of Sandwich, to set aside a conveyance of real estate by him to the defendant.

In the Superior Court, the suit was referred to a master. Material findings by the master are described in the opinion. No objection nor exception to the report was filed. By order of *Sisk,* J., there were entered an interlocutory decree confirming the report and a final decree granting to the plaintiffs the relief sought. The defendant appealed.

The case was submitted on briefs.

*E. A. Burnett,* for the defendant.

*J. F. Kiernan,* for the plaintiffs.

RUGG, C.J. This is a suit in equity by the heirs at law of Isaiah M. Adams to set aside a deed by him to the defend-

ant dated on the twenty-first day of October, 1919. The
case has been referred to a master under a rule requiring him
to find the facts without reporting the evidence. The find-
ings of fact made by the master must be accepted as true.
Those material findings are that at the time the deed was
executed Isaiah M. Adams was more than eighty years of
age, infirm and blind, weakened mentally and living alone.
He had known the defendant and her husband for a period
of years and had been in the habit of calling at her home.
He had contemplated an operation at a Boston hospital on
his eyes, on both of which were cataracts. Conversation
between him and the defendant was had on October 18, 1919,
during which it was represented to him, to use the words
of the master, " by the defendant that if the doctors and offi-
cials of the hospital became aware that he possessed prop-
erty and money, that he would be obliged to pay excessive
charges for the operation upon his eyes, and for his care and
treatment, and it was suggested that it would be a wise pre-
caution on his part, in order to avoid such overcharges, to
temporarily transfer his real estate to her to hold for him
until after the operation and treatment were completed,
and that when he returned from the hospital his property
would be reconveyed to him; and on October 21, 1919, the
defendant went from her home in Bourne, with a justice of
the peace and a prepared deed, to Forestdale. The deed
was read to Mr. Adams and Isaiah M. Adams' name was
signed [by] the justice of the peace . . . and acknowledged.

" I find that afterwards the defendant wrote to the hospital
and represented that Isaiah M. Adams was [a] man without
property and unable to pay for an operation or treatment,
and that he was received as a free patient at the hospital."
Shortly after the execution of the deed Isaiah M. Adams
went to the home of the defendant, where he remained until
he went to the hospital, and returned on November 9, 1919,
staying with her until his death on March 15, 1920. No
money was paid to him for the deed. The property thereby
conveyed was worth $2,500. Further findings by the master
are: " For a number of years prior to his death, Isaiah M.
Adams' business transactions were limited to his duties

about the farm, and the sale of its products, and to collecting his pension and State aid. In the latter two matters he procured the services of other persons to perform the details for him. I find that he was mentally able to choose and direct such persons to do this work for him, and to do such other business as was incidental to his life on the farm.

" That as a result of treatment for his eyes, his sight was greatly improved for a period of several months prior to his death, and he was able to read.

" That there was no evidence presented that Isaiah M. Adams ever requested the defendant to deed back to him the property he had conveyed to her.

" That after the execution and recording of the deed, and prior to his entry into the hospital, Isaiah M. Adams' signature was attached by another person, one Mrs. Beebe, by his direction and in his presence, to a written agreement which provided that the defendant would provide him with a home for life, and in consideration thereof he would deed to her his farm in Forestdale. This agreement was made under circumstances identical with the execution of the deed." In the Superior Court a decree was entered to the effect that the deed was procured by fraud and undue influence practised upon Isaiah M. Adams by the defendant and ordering conveyance by the defendant to the plaintiffs. The defendant's appeal brings the case here.

There is no appeal from the order overruling the defendant's demurrer. So far as that affects the merits of the final decree, it rightly was overruled.

Whether there has been undue influence or not is a question of fact. There ought to have been an explicit finding by the master on that point, which was an issue directly raised by the pleadings. *Blossom* v. *Negus,* 182 Mass. 515. The trial judge rightly might draw such inferences from the facts found as were reasonably warranted. *Smith* v. *Kenney,* 213 Mass. 6, 9. *Fairbanks* v. *McDonald,* 219 Mass. 291, 297.

When a case is presented to this court on appeal from a decree entered on a master's report, without full recital of evidence, this court draws its own inferences from the facts

found without giving weight to the decree. It is in this respect in the position of the trial judge. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 333, 334, and cases there collected. *Bearse* v. *Lebowich,* 234 Mass. 492, 497.

There is not enough in this record to justify a finding that Isaiah M. Adams was too weak in mind to execute the deed with understanding of its meaning, effect and consequences. *Boyden* v. *Hill,* 198 Mass. 477, 484. *Walsh* v. *Fore River Shipbuilding Co.* 230 Mass. 89. *Sutcliffe* v. *Heatley,* 232 Mass. 231.

His weakened mental condition is an important factor in determining whether advantage was taken of him by misrepresentation, imposition or undue influence. *Farnam* v. *Brooks,* 9 Pick. 212, 220.

No fiduciary relation existed between the defendant and Isaiah M. Adams. *Smith* v. *Smith,* 222 Mass. 102.

The case turns on the question whether undue influence can be predicated on a conveyance of property induced by the statements by the defendant to one in the mentally weakened condition of Isaiah M. Adams, that he would be charged excessively by a hospital if he told the truth about owning real estate worth $2,500, that he ought to convey it to her temporarily and it would be reconveyed to him after his return from the hospital. The statement was a gross misrepresentation concerning the charitably humane institutions in Boston, to which one naturally would go to secure relief from the misfortune which had befallen Mr. Adams. No specific evidence is needed to that point. It is common knowledge that the great public hospitals are charitable foundations where ordinarily humanitarian service is rendered freely to those who cannot pay, and at much less than cost to those of slender or moderate means. *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass. 66. Every presumption exists in favor of the honest management of such charities. *Nevins* v. *City Council of Springfield,* 227 Mass. 538, 541. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50, and cases there collected. *Police Commissioner of Boston* v. *Boston,* 239 Mass. 401, 408. *Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 353. Such a

misrepresentation practised upon one in the mental condition of Mr. Adams for the purpose and with the result of procuring conveyance of his property is an exercise of undue influence. The agreement for support by the defendant of Mr. Adams, executed later but before his going to the hospital, in consideration whereof he " would deed to her his farm . . . under circumstances identical with the execution of the deed," confirms that inference. If the deed was valid and understood, there was no occasion for the agreement. The defendant does not appear to have offered to return the property to Mr. Adams in accordance with the arrangement at its execution. This conduct gives color to the purpose of the initial representations. The representations and the acceptance of the deed by the defendant were for the avowed purpose of enabling Mr. Adams to practise a fraud on the hospital and to secure from it free treatment, for which one in his position ought to have made reasonable compensation. In the perpetration of this fraud the defendant was an active participant in her correspondence with the hospital.

While the case is not free from difficulty, we are of opinion that the Superior Court was right.

*Decree affirmed.*