ALBION G. PEIRCE, special administrator, *vs.* WILLIAM H. MOISON.

Essex.    February 23, May 24, 1926. — June 29, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Pleading and Practice*, Appeal, Master.   *Equity Jurisdiction*, To relieve from fraud.

A judge, hearing a suit in equity upon a master's report without a report of the evidence, may draw such further and different inferences from the facts found by the master as are reasonably warranted.

A master, to whom was referred a suit in equity to require an accounting by the defendant of rents, profits and receipts which had come to him from the rental and sale of real estate, conveyance of which to him by the plaintiff, a woman, was alleged to have been procured by fraud or undue influence on the defendant's part, concluded from subsidiary facts found by him that the allegations of the bill had not been sustained.  Exceptions by the plaintiff to the report were sustained and an interlocutory decree was entered ordering the accounting sought. Upon a report of the suit to this court, it appeared from the findings by the master that, seven days after her husband's death, when she was in enfeebled health, physically and mentally, the plaintiff conveyed the real estate to the defendant, who was a stepbrother of her husband, had been his trusted friend and was the executor of his will; that, except for the defendant, the plaintiff had no one to rely upon for advice and guidance concerning her affairs; that the conveyance was upon no consideration except that, as stated in the deed, the defendant would provide suitable maintenance during their lives for the plaintiff and a woman who for years had been virtually a member of her family and the mainstay of her household and her closest and apparently only intimate associate and friend; that fourteen months later the defendant procured a conveyance of the property from the plaintiff free from the obligations stated in the former deed and then sold the property for $21,500, removed both women from their former home, paying the plaintiff's companion a flat sum of $125 and paying $25 per month

toward the support of the plaintiff with relatives in Lynn.   The plaintiff's companion then voluntarily determined to return to her home in Quebec.   *Held*, that

(1) The mere fact, that the plaintiff had sufficient understanding to make a deed, was not decisive of the issue, whether the deed was legally binding upon her or upon the representatives of her estate;

(2) The reliance of the plaintiff on the defendant and her implicit belief that he would act for her best interests established between them a relation which in effect was one of trust;

(3) The inevitable conclusion from the facts was that the conveyances were procured by reason of fraud and undue influence practised upon the plaintiff by the defendant.

BILL IN EQUITY, filed in the Superior Court on March 5, 1923, by Eusible Dugrenier, by her conservator, Azilda Proulx, for an accounting of rents, profits, and receipts from real estate conveyed by the plaintiff to the defendant, which he retained for a time and afterwards sold.

In the Superior Court, the suit was referred to a master. Material findings by the master are stated in the opinion. After the preparation and before the filing of a supplementary report by the master, the plaintiff died and the suit thereafter was prosecuted by Albion G. Peirce, special administrator of her estate.   Eusible Dugrenier will be referred to hereafter as the plaintiff.

The suit was heard upon exceptions to the master's reports by *Macleod*, J.   The substance of material findings and rulings by the judge and an interlocutory decree entered by his order are described in the opinion.   The defendant appealed from the interlocutory decree and the judge under G. L. c. 214, § 30, reported to this court for determination the propriety of his findings and rulings and of the interlocutory decree.

The case was submitted on briefs.

*M. A. Cregg & H. A. Cregg*, for the defendant.

*W. F. Moyes & R. E. Burke*, for the plaintiff.

CROSBY, J.   This bill in equity is brought by the plaintiff by her conservator, for an accounting of the rents and profits of certain real estate conveyed by the plaintiff to the defendant.   It is alleged that the conveyance was obtained by fraud and undue influence practised upon the plaintiff by the defendant.   The case was referred to a master who

made certain subsidiary findings and found as a conclusion therefrom that the allegations of the bill had not been sustained. A judge of the Superior Court found and ruled, upon the master's report and supplemental reports, that the conveyance of the real estate by the plaintiff to the defendant was procured by the fraud and undue influence of the latter, and ordered an interlocutory decree to be entered confirming the master's report, as modified by him, and sustaining the plaintiff's exceptions to the report and supplemental reports so far as the same were not inconsistent with the findings and rulings made; the report as so modified to be recommitted to the master for the purpose of an accounting between the parties of the rents and profits and the proceeds of the sale by the defendant of the real estate, after deducting such proper disbursements as the defendant had made since the date of the deed, "for the maintenance, alteration and repair of said real estate, and for the maintenance or benefit of the plaintiff, such accounting to determine the balance, if any, due from the defendant to the plaintiff." The defendant appealed from this interlocutory decree and the case is before us on a report by the presiding judge.

The evidence before the master is not reported and his findings of fact will not be reversed unless mutually inconsistent or plainly wrong. *Eddy* v. *Fogg*, 192 Mass. 543. *Wallin* v. *Fredin*, 241 Mass. 233. The trial judge was authorized to draw such further or different inferences from the facts found by the master as were reasonably warranted. *Smith* v. *Kenney*, 213 Mass. 6, 9. *Adams* v. *Whitmore*, 245 Mass. 65, 67.

"When a case is presented to this court on appeal from a decree entered on a master's report, without full recital of evidence, this court draws its own inferences from the facts found without giving weight to the decree. It is in this respect in the position of the trial judge." *Adams* v. *Whitmore*, 245 Mass. 65, 67, 68.

After the hearings before the master were completed and he had prepared his report and supplemental report, and before the latter was filed, the plaintiff died, and thereafter a special administrator of her estate was appointed who has entered an appearance and is represented by the attorney

for the original plaintiff.  Eusible Dugrenier will hereafter
be referred to as the plaintiff.

The deed was executed on September 10, 1918; it appears
from the findings of the master that at that time the plaintiff
was sixty-nine years of age; that she was by birth a French
Canadian; that she could not or did not speak English; that
at the time of the hearings before the master she was under
conservatorship; that her husband, Alfred Dugrenier, died
on September 3, 1918, seven days before the deed was exe-
cuted.  It also appears that many years ago Rebecca
Frederick, a native of Canada, and a distant relative of the
plaintiff's husband, came to live with them and remained a
member of the family until November, 1922, when she re-
turned to Canada.  It was also found by the master that in
the year 1910 the plaintiff had a shock and was very ill for
three months; that she became somewhat improved in health,
but at times would lose her memory and her sight was af-
fected, her face was drawn out of shape and one arm and leg
were paralyzed.  She. could dress herself at times and at
other times she was unable to do so, and "ever since she had
the first shock she had continuation attacks every once in a
while."  During this period Rebecca Frederick lived with
and assisted the plaintiff in doing the housework, collecting
rents, and performing other work.

In dealing with the exceptions to the master's report and
its recommittal, the trial judge found and ruled as follows:
"The plaintiff at the time of her husband's death on Sep-
tember 3, 1918, was the owner, subject to a mortgage and
certain other encumbrances, of two apartment houses in
Lawrence, comprising together six or seven apartments, in
one of which the plaintiff had lived for many years with her
husband and an unmarried woman, Rebecca Frederick, who
was virtually a member of the family and the mainstay of
the household.  . . .  Within a week after her husband's
death the plaintiff at the suggestion of the defendant, con-
veyed her entire property to the defendant upon the condi-
tion, embodied in the deed, that the defendant should provide
suitable maintenance for the plaintiff and her said companion,
Rebecca Frederick, during their lives.  The defendant also

verbally promised the plaintiff that he would 'let her live in the house always.'  . . . In so far as the plaintiff was competent to form an intelligent judgment in regard to the expediency of making this conveyance, she was actuated in a large measure by the belief that it guaranteed to her the right to spend her few remaining years in her old home, amid familiar surroundings and in the continued companionship of Rebecca Frederick, her closest, and apparently her only intimate, associate and friend.   If the plaintiff had understood that no such provision was embodied in, or made a condition of the deed of conveyance, she would not have consented to the arrangement or executed the deed. . . . About a year later, the defendant procured from the plaintiff an unconditional conveyance of the said property.   The plaintiff, being thus stripped of her entire property and resources and left without any legal redress against the defendant, was obliged to accept such provision as the defendant might choose, from complaisance or considerations of expediency, to make in her behalf . . . .   For a time, the defendant permitted the plaintiff and Rebecca Frederick to share their old apartment with the defendant's mother and allowed them, from the rentals received from the remaining apartments, a sufficient sum to provide for their household expense.   In October, 1921, however, the defendant rented this apartment to other tenants and removed the women to his own household . . . .   This change was made, partly to obtain the additional rental, but chiefly because the defendant believed that the arrangement would prove irksome to Rebecca Frederick; that she would be forced to leave the defendant's household; that the plaintiff would then have no further incentive to remain, and that the defendant would thus be relieved, in whole or part, of any further responsibilities towards the plaintiff and her companion . . . .   These expectations proved well founded.   In the following year Miss Frederick returned to her old home in Quebec, giving the defendant a release from all obligations on receipt of one hundred and twenty-five dollars ($125). A few weeks later the plaintiff also left the defendant's household and went to live with relatives in Lynn, under an agree-

ment by which the defendant provided twenty-five dollars ($25) a month towards the plaintiff's support . . . . On September 21, 1922, the property conveyed by the plaintiff to the defendant was sold by the defendant to one Eva Kapelovitch for twenty-one thousand five hundred dollars ($21,500) . . . . From such findings and inferences, including the findings of the master . . . I find and rule that the conveyance of the plaintiff's real estate to the defendant, as hereinbefore set forth, was procured through the fraud and undue influence of the defendant . . . . If . . . the language of the master . . . is to be construed as a finding by implication that no fraud or undue influence was exercised by the defendant, I am constrained to rule, that such finding is repugnant to, and inconsistent with, the subsidiary findings of fact contained in the master's report and the reasonable inferences to be drawn therefrom."

We need not refer to all the findings of the trial judge, nor determine whether, as the defendant contends, some of them are contrary to those found by the master.

The defendant was a stepbrother of the plaintiff's husband, and after her husband's death, it does not appear that there was any one except the defendant upon whom the plaintiff could rely for advice and guidance concerning her affairs. The master found that he had been a trusted friend of the plaintiff's husband and was the executor of his will; that no other person stood in so close relation to the plaintiff and Miss Frederick as the defendant; that "They accepted his strong personality as matter of course and implicitly relied on him"; that "When Dugrenier died leaving in the household but the two women, his enfeebled widow and Rebecca Frederick, naturally they looked to Moison."

Without further reciting the findings, it is manifest that the plaintiff relied on the defendant and implicitly believed that he would act for her best interest. The confidence which she reposed in him, as shown by the master's findings, established a relation which in effect was one of trust. In view of her age, ignorance of the English language and enfeebled condition, she was much more susceptible to undue influence than if she had been in sound health and mentally

alert. The master finds that after the plaintiff suffered from a shock in 1910 she was impaired physically and mentally thereby, and that her mind was impaired from and after her husband's death, but that she did have "sufficient mind to comprehend the proposition of a conveyance 'to rent' to Moison, and that she did knowingly and willingly make the conveyance of September 10, 1918, to him."

The master seemingly bases his ultimate finding upon his subsidiary finding that she had sufficient understanding to make the deed. That, however, is not decisive of the issue whether it is legally binding upon her or upon the representative of her estate. As was said in *Lyons* v. *Elston*, 211 Mass. 478, at pages 481 and 482: "Although weakness of mind is often a condition for the exercise of improper influence, the full possession of one's faculties does not necessarily render one immune to such influence. There may be absent that strength of character required to resist the overpowering will of another."

The findings of the master show that the plaintiff deeded all her real estate to the defendant upon no consideration except that he would provide a suitable maintenance for her and Rebecca Frederick during their natural lives respectively, and would cause their bodies to be buried as stated in the deed; that about fourteen months after the deed was executed and delivered to the defendant, he caused her to execute another deed releasing him from the obligations imposed in the first deed; that on September 21, 1922, he sold the entire estate for $21,250 and removed both women from their former home to his own house, where Miss Frederick remained for a year and a month, when he paid her $125 and obtained from her a general release from all debts and demands, and she went to Canada; that about ten weeks after Miss Frederick left, the plaintiff went to live with relatives in Lynn under an oral agreement by which the defendant paid $25 a month toward her support. She remained in Lynn until her death. Upon these undisputed facts and the other facts found by the master, and in view of the relation of trust and confidence which existed between the parties, the irresistible conclusion is that the deeds in question were

procured by reason of the fraud and undue influence practised upon the plaintiff by the defendant. *Chase* v. *Hubbard,* 153 Mass. 91. *Lyons* v. *Elston, supra. Adams* v. *Whitmore, supra. Church* v. *Brown,* 247 Mass. 282, 287. *Musto* v. *Tutella,* 247 Mass. 303.

It follows that the interlocutory decree entered by order of the trial judge sustaining the plaintiff's exceptions and confirming the master's report as modified and recommitting the report for an accounting is affirmed.

*Ordered accordingly.*