WENDELL P. HARVEY, administrator, *vs.* ANNIE CROOKER & another.

Middlesex. March 6, 1929. — May 29, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Equity Pleading and Practice*, Master: findings of fact; Appeal; Answer. *Contract*, Rescission, Failure of consideration. *Election*.

The plaintiff in a bill in equity brought by an administrator of the estate of a woman against another woman averred that his intestate had assigned to the defendant a certain mortgage in consideration of a promise by the defendant to support the intestate and to pay her burial expenses and that the defendant had failed to do either; the plaintiff sought a reassignment of the mortgage. The defendant in her answer alleged and in her testimony stated that there was no agreement or understanding between her and the intestate that the defendant would support the intestate during her life and pay her burial expenses upon her death, but that she did furnish some support to the intestate. A master found that in consideration of the transfer of the mortgage and note, the defendant agreed to support the intestate during her lifetime, but that there was no agreement to pay burial expenses; that for about six months before her death the intestate had been cared for in a hospital, at a charge of $157, which had not been paid; that during that time the defendant at her request had drawn various sums from the intestate's bank account and had expended them for her, and also herself had made expenditures for luxuries for the intestate as a friend, for which she did not intend to make any charge. A judge of the Superior Court, stating that he was unable to find such a breach of contract or failure of consideration as to warrant rescission of the contract, ordered the bill dismissed. *Held*, that

(1) The defendant was bound by her answer, which showed that she repudiated and failed to perform the contract;

(2) The defendant's failure to support the intestate and her absolute repudiation of the contract created an obligation on the part of the defendant to return the consideration and entitled the plaintiff as administrator to maintain the suit for rescission;

(3) The filing of the bill and service thereof upon the defendant were sufficient evidence of the election of the plaintiff to rescind;

(4) The mere fact that no demand had been made by the hospital authorities upon the defendant did not affect her obligation under the contract;

(5) Whatever the defendant furnished to the intestate was not in pursuance of the agreement to support and did not relieve her from the obligation imposed thereby;

(6) A statement in the defendant's brief, that she "is now ready and willing to pay the only outstanding obligation due and payable for the care, maintenance, and support of . . . [the testatrix]," was not a defence to the bill which in itself was a rescission of the contract by the plaintiff after the defendant had neglected to perform: the right of the plaintiff to maintain the bill accrued upon the defendant's default;

(7) No demand by the plaintiff was necessary before the commencement of the suit;

(8) A decree for the plaintiff should be entered.

BILL IN EQUITY, filed in the Superior Court on February 23, 1928, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *F. T. Hammond*, J., there were entered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiff appealed from the final decree.

*F. S. Harvey*, for the plaintiff.

*S. Baker*, for the defendants.

CROSBY, J. This is a suit in equity by which the plaintiff, as administrator of the estate of Ella J. Dingwell, seeks to compel the defendant Annie Crooker (who will hereinafter be referred to as the defendant) to execute and deliver to the plaintiff an assignment of a certain mortgage.

The bill alleges that on September 16, 1926, the plaintiff's intestate executed and delivered to the defendant an assignment of a mortgage given by the defendant Matilda Wikander to the intestate as security for the payment of a note for $950; that the assignment was so executed and delivered upon the consideration that the defendant would support the intestate during her life and would pay her burial expenses upon her death, but that she has failed to do either. The defendant in her answer alleges that there was no agreement or under-

standing between them that the defendant would support the intestate during her life and pay her burial expenses upon her death, but that she did furnish some support to the intestate.

The case was referred to a master and was thereafter heard by a judge of the Superior Court; it comes before us on appeal from the final decree entered by him. As the evidence is not reported, the facts found by the master are conclusive unless upon the face of his report they are mutually inconsistent or contradictory and plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Brockton Olympia Realty Co.* v. *Lee,* 266 Mass. 550.

The facts found by the master are in substance as follows: Mrs. Dingwell was a widow and in August, 1924, went to live with a Mrs. Dixon and was to pay $7 a week for her room, board and care; at that time Mrs. Dingwell was about sixty-seven years old "and was having trouble in getting about." In the spring of 1925 she suggested that she would transfer to Mrs. Dixon the note for $950, given by the defendant Wikander to the intestate, which was secured by a first mortgage on real estate, if Mrs. Dixon would agree to take care of her during the remainder of her life, but Mrs. Dixon did not agree to do so. On September 16, 1926, she assigned the note and the mortgage to the defendant, whom she had known as a child, and who had rendered many acts of kindness to Mrs. Dingwell, had frequently visited her, and was regarded by her as her most trusted friend. At the time of the assignment Mrs. Dingwell's resources consisted of this note for $950, a note for $250 given by her brother, and $287.94 deposited in a savings bank. After the assignment the defendant endeavored to obtain the admission of Mrs. Dingwell to the Old Ladies' Home, but was unable to do so on account of her physical condition. On February 21, 1927, Mrs. Dingwell, on her own application, was admitted to the Chelmsford Street Hospital which was conducted by the city of Lowell. She stated that she was going there because she felt she could get better care in the hospital and would pay only $6.25 a week while there. To all persons who visited her at the hospital she always said she was paying for her maintenance. She continued to live at the hospital until her death on August

15, 1927. Her brother, who was her only near relative, took charge of her body and burial.

During the time she was at the hospital the defendant visited her daily and brought her many things. The money in the savings bank was withdrawn by Mrs. Dingwell on various orders and paid over to the defendant who expended it, and more besides, for purchases for Mrs. Dingwell; but the master found that whatever more was spent by the defendant was for luxuries not furnished by the hospital but which were furnished by the defendant as a friend and for which she did not intend to make any charge. She gave as reasons for the transfer of the note and mortgage that Mrs. Dingwell was afraid her brother would gradually borrow more money from her, and that she wanted to show her appreciation for the kindness of the defendant. At the time of the transfer the intestate was about seventy years of age and had no property except the $950 note and mortgage, the $250 note, and the deposit in the savings bank. The master found that, while not in the best of physical health at this time, there was evidence that her mental faculties were unimpaired by age. He states that, "Considering all the probabilities and upon all the evidence, I am drawn to the conclusion that at the time of the transfer of the Wikander mortgage to Mrs. Crooker, there was an agreement made for the support of Mrs. Dingwell and I, therefore, find that in consideration of the transfer of the Wikander mortgage and note, Mrs. Crooker agreed to support Mrs. Dingwell during her lifetime."

He further found that there was no agreement on the part of the defendant to pay for the burial of the intestate; that there was no other claim for the care and support of the deceased except that due to the city of Lowell, which is for her care from February 21, 1927, to August 15, 1927, at $6.25 a week and amounts to $157.14; and that no demand for payment of that sum has been made by the city upon the defendant. An interlocutory decree was entered confirming the master's report.

The trial judge states that he is unable to find upon the facts found by the master that there has been such a breach of contract by Mrs. Crooker or such failure of consideration

for the assignment as entitled Mrs. Dingwell's administrator to have the contract rescinded. A final decree was entered dismissing the bill with costs. The case is before us on appeal from that decree.

The contract as found by the master is clear and free from uncertainty or indefiniteness. Upon the facts found and the reasonable inferences to be drawn therefrom, it is plain that the defendant repudiated and failed to perform the contract; in her answer she specifically denies that she ever made the contract to support the intestate, and confirmed her denial in her pleadings by her testimony. She is bound by the allegations of her answer. G. L. c. 231, §§ 87, 144. *Snowling* v. *Plummer Granite Co.* 108 Mass. 100. *Ballou* v. *Billings,* 136 Mass. 307. *Bancroft* v. *Cook,* 264 Mass. 343, 348 and cases cited.

The defendant's failure to support the intestate and her absolute repudiation of the contract created an obligation on the part of the defendant to return the consideration. Mrs. Dingwell could have rescinded the contract in her lifetime, and it may be rescinded by the administrator of her estate. The filing of the bill and service thereof upon the defendant are sufficient evidence of the election of the plaintiff to rescind. *Parker* v. *Simpson,* 180 Mass. 334, 343. *Batty* v. *Greene,* 206 Mass. 561, 564, 565. *Lufkin* v. *Cutting,* 225 Mass. 599, 607.

The findings of the master that Mrs. Dingwell stated she went to the hospital because she believed she would receive better care there and "would only pay" $6.25 each week while there, and that apart from the $250 note and the savings bank account, all her resources consisted of the $950 note and mortgage, well warranted the inference that she hoped and expected the $950 note would provide for her care and support during the remainder of her life, and that she believed the charges of the hospital on her account were being paid by the defendant who knew she was being cared for at the hospital as she visited her daily during all the time she was there.

It is found that there is due the city of Lowell for the care of the intestate from February 21, 1927, to August 15, 1927,

the sum of $157.14 which, under the terms of the contract, the defendant obligated herself to pay. The fact that no demand was made by the city upon the defendant does not affect her obligation under the contract. She knew that Mrs. Dingwell was being cared for by the city and she is not released from liability to pay the amount due because no demand was made upon her. So far as appears, no one representing the city had any knowledge of the agreement between Mrs. Dingwell and the defendant. It was the duty of the defendant in the circumstances to ascertain what, if anything, was due the hospital for the care of the intestate and to pay it, in accordance with the terms of the contract. Besides, she is not in a position to contend that the city of Lowell should have made demand upon her for the amount due under the agreement, the existence of which she denies.

Although the master found "that the defendant, Annie Crooker, expended more for things purchased for Mrs. Dingwell than the total sum withdrawn from the Lowell Five Cent Savings Bank," he also found "that whatever more the defendant . . . expended was for some luxuries which the hospital did not furnish, and that the defendant . . . furnished such luxuries as a friend and intended to make no charge therefor." It thus appears that whatever the defendant furnished was not in pursuance of the agreement to support and does not relieve her from the obligation imposed thereby.

The fact, as stated in the defendant's brief, that she "is now ready and willing to pay the only outstanding obligation due and payable for the care, maintenance, and support of Mrs. Dingwell," is not a defence to the present bill, which was filed February 23, 1928, and constitutes a rescission of the contract by the plaintiff after the defendant had neglected to perform. The right of the plaintiff to maintain the bill accrued upon the default and rescission; *Amos* v. *Oakley,* 131 Mass. 413; and no demand was necessary before bringing suit. *Andrews* v. *Frye,* 104 Mass. 234. *Soderlund* v. *Helman,* 215 Mass. 542.

The findings of the master show that the defendant has entirely neglected and failed to perform the contract and, so

far as appears, never has paid any sum for the support of the intestate under the terms of the agreement. Whatever she may have expended for luxuries upon the facts found by the master cannot be considered. The case is governed by well settled principles. Upon the facts found there was a failure of consideration by reason of the neglect of the defendant to perform the contract, which entitles the plaintiff to rescind and to receive an assignment of the note and mortgage to him. *Parker* v. *Russell,* 133 Mass. 74. *Ballou* v. *Billings, supra. Soderlund* v. *Helman, supra. Putnam* v. *Bolster,* 216 Mass. 367. *Martin* v. *James Cunningham, Son & Co.* 231 Mass. 280. *Peirce* v. *Moison,* 256 Mass. 528.

There is no specific prayer in the bill that the defendant be ordered to execute and deliver to the plaintiff the note secured by the mortgage, but the prayer for general relief is sufficient for that purpose.

Upon the findings of the master and the reasonable inferences to be drawn therefrom we are of opinion that the final decree should be reversed and a decree entered in favor of the plaintiff in accordance with the prayers of the bill, with costs.

*Ordered accordingly.*