LAURA ARCISZ *vs.* JOHN PIETROWSKI & another.

Essex. May 14, 1929. — June 27, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Way,* Private: abandonment. *Easement. Equity Pleading and Practice,* Master: findings; Decree.

A master, in a suit in equity commenced in 1928 to enjoin obstruction of a private way extending from land owned by the plaintiff to a public way and adjacent to land owned by the defendant, found that the way

originally was intended for the use of the owners of both lots; that a fence extended across the way at the plaintiff's land; that an old gate therein ceased to be used as such sometime after 1908; that about 1901 a board gate was built across the way where it opened into the public way; that the defendant's predecessor at one time kept such gate closed and padlocked; that for many years he maintained a flower garden along one side of the way, and for two years used the entire way for a vegetable garden, after which it was sowed to grass for several years; that, within six years previous to 1928, the way was used several times by the plaintiff and members of his family, in all instances by climbing over the fence without attempting to use the old gate therein; that for nearly twenty years previous to 1928 the defendant and his predecessor had denied that the plaintiff and his predecessor had any rights in the way; and that the plaintiff and his predecessor had abandoned their rights in the way by acquiescence for such period in the adverse use and claim of the defendant and his predecessors. A decree was ordered to be entered by a judge of the Superior Court granting the relief sought by the plaintiff. Upon a report of the suit without a report of the evidence, it was *held*, that

(1) This court stood in the position of the judge who heard the suit and might draw its own inferences from the facts found by the master;

(2) The finding by the master, that the plaintiff and his predecessor had acquiesced in the adverse use and claim by the defendant and his predecessor, was inconsistent with the other facts found by him and therefore was not conclusive;

(3) The findings by the master did not warrant the conclusion that there had been an abandonment of their rights in the way by the plaintiff and his predecessor; the facts warranted at most a finding of mere nonuser by them without intent to relinquish their rights;

(4) The fact, that the plaintiff nailed up and permanently fastened the old gate in the fence, was insufficient to show an intent to relinquish his rights;

(5) The decree as ordered was warranted.

Where, following an order for a final decree in a suit in equity granting relief by way of injunction and granting a prayer for damages, it did not appear from the record upon a report of the suit that damages had been assessed, this court by rescript ordered that a decree be entered granting the relief sought and directing that the suit be heard further for the assessment of damages.

BILL IN EQUITY, filed in the Superior Court on March 1, 1928, and afterwards amended, to enjoin the obstruction of a private way.

The second prayer of the bill was that the defendants be enjoined from obstructing or interfering with the plaintiff's rights in the way; the third prayer was for damages; and the fourth for costs. The suit was referred to a master.

Material facts found by him and decrees entered and ordered by *Keating*, J., are described in the opinion. The judge reported the suit for determination by this court.

*James J. Ronan*, (*A. S. Bachorowski* with him,) for the defendants.

*T. A. Henry*, for the plaintiff.

CROSBY, J. This is a bill in equity brought to enjoin the defendants from obstructing a right of way twelve feet wide, running from Webb Street, in Salem, to the northerly side of the rear land of the plaintiff. The defendants are the owners in fee of a parcel of land on the westerly side of the way. The case was referred to a master who made certain findings of fact, and on recommittal to him, found that the defendants and their predecessors in title "have steadfastly denied that the owners or occupants of the plaintiff's house have any rights in and to the way, and . . . this denial has been acquiesced in by plaintiff and her predecessors in title. This period of abandonment and of repudiation, however, has been of many years' duration and since its beginning, has been complete and uninterrupted. It had not continued for a full period of twenty years prior to the filing of the plaintiff's bill, but had continued for at least seventeen years, and possibly for nineteen years."

A judge of the Superior Court sustained one objection to the report, overruled the remaining exceptions, ordered that a final decree be entered in accordance with the prayers of the bill Nos. 2, 3, 4 and 6, and reported the case to this court upon the pleadings, the master's report as amended, the supplemental report, the interlocutory decree confirming the reports and the exceptions and order for a final decree, the parties having agreed that, if the trial judge was warranted in ordering a final decree to be entered as ordered, such decree is to be entered; otherwise a final decree is to be entered dismissing the bill with costs. It does not appear from the bill that it contains a prayer numbered 6.

As the evidence is not reported, this court draws its own inferences from the facts found, and is in this respect in the position of the trial judge. *Adams* v. *Whitmore*, 245 Mass. 65, 67, 68. *Peirce* v. *Moison*, 256 Mass. 528, 530. *Cohen* v.

*Bailly,* 266 Mass. 39, 48. As all the facts have been found by the master, this court has the right to draw additional or different inferences of fact from the facts found. *Anagnosti* v. *Almy,* 252 Mass. 492, 500.

The master made the following and other findings: On June 22, 1860, John Saul conveyed to Thomas Maroney the parcel now owned by the defendants. The description in this deed is as follows, "bounded . . . fifty feet by a private way of twelve feet in width, which extends southwesterly from Webb Street together with the right to use said way in common with the other owners and abuttors thereon." By various mesne conveyances, in each of which the same words were used, the title on July 11, 1901, became vested in Albert and Mary (then known as Maryjanna) Smerczynski, husband and wife, and by mesne conveyances the land now owned by the defendants came to Mary Smerczynski, the widow of Albert, her deed being dated June 24, 1910. In the deed to her the description contained the following: "Easterly by a private way twelve feet wide which runs southerly from Webb Street in said Salem about sixty two feet . . . ." "No mention was made in any of these deeds of any rights of way, except such as may be implied from the bounding description. On August 7, 1926, Maryjanna Smerczynski conveyed the house and land to the respondents by a description identical with that contained in the deed to herself, and also omitting any specific mention of any right of way." Lot No. 3, the land of the plaintiff abutting on the way, is described in part as follows: "A certain parcel of land . . . bounded Northeasterly by land of Maroney by the Southerly end of a twelve foot way and by land now or formerly of Waters." This land on April 23, 1896, was conveyed by Mary L. Hill, the daughter of John Saul, to whom it was set off in partition proceedings "Together with all our right, title and interest in said way above mentioned." "There were many conveyances of this parcel from that date until the plaintiff acquired title, and in every deed, including the plaintiff's, the same description was used and the same sentence appeared with reference to the seller's 'right, title and interest in said way.' The plaintiff acquired title on December 4, 1922, and

moved into the northerly side of the house shortly afterward."

At the southerly end of the way at the plaintiff's land there is an old fence running across the entire way. Until two or three years ago, the way was unobstructed from the plaintiff's fence to Webb Street, but at that time the defendants raised their house and built front steps into the way so that at that point the way is now only eight feet and seven inches wide. The plaintiff desires to build a garage in her rear yard, but, without the right to use the way, her rear yard is inaccessible from any street for automobiles or wagons. The way is well defined with a plank walk on its westerly side for the use of pedestrians. There are no openings into it from any of the abutting properties, including the plaintiff's, and on the surface it would appear to be for the exclusive use of the defendants' land if not actually an integral part of that land.

The master further found that when the twelve-foot way was first referred to by deed of June 22, 1860, it was already in existence and defined; that at the date of the deed the grantor, John Saul, owned the entire way; that the plaintiff's house was erected before 1860, and at that time the way was intended for the use of the owner of the land now owned by the plaintiff and such portion of Lot No. 4 as abutted on the way, and had been laid out for that purpose. In 1901 "the fence on what is now the plaintiff's land, at the end of the way, was standing as now, and no gate was apparent to the members of the Smerczynski family." There is no credible evidence indicating any use of a gate from this land now owned by the plaintiff into the way, although in his first report the master found that a gate was there originally and continued there for many years, but that it "has not been used *as a gate* for more than twenty years prior to the filing" of the bill. In his supplemental report upon further evidence he found that "the gate and the right of way were actually in existence and in use during the life of Albert Smerczynski and that it was probably not until his death on September 30, 1908, and until after his widow . . . had moved back into the Webb Street house, that the first serious objection was

raised to any further use of the way by the occupants of the plaintiff's house." It was further found that on various occasions, during the past six years, the way has been used by occupants of the plaintiff's house, by herself and members of her family, but in every case the person using the way climbed over the fence and made no effort to open any gate; that the way was used by her husband by climbing the fence on one occasion, and by her son frequently, but always was so used by passing over the fence. By the modified finding in the supplemental report the master found that the use of the gate "as a gate" did not cease until some time after 1908. It follows that the finding that "the owner of the plaintiff's house acquiesced" in the "complete and exclusive dominion and control over the way" after 1908 by the owner of the defendants' house was unwarranted.

The master's ultimate finding in the first report in part is as follows: ". . . there was a nonuser of the way by plaintiff's predecessors in title for a period of not less than twenty years prior to her acquiring title, and that this nonuser, coupled with the nailing up of the gate, and the adverse user of the way by the Smerczynski family, are sufficient to justify a further finding that the right of way was abandoned by plaintiff's predecessors in title." He states: "I find as a fact, from the wording of the various deeds, from the layout of the land, and from the subsequent acts of all the parties, that the fee to the way was originally intended to be held by the owners of Lots No. 3 and 4 and the Maroney land, but that, in view of my finding of abandonment of the right of way by plaintiff's predecessors in title, the matter of the present ownership of the way is no longer material."

The findings in the supplemental report are based upon the testimony of additional witnesses and a reëxamination of the original evidence. The additional subsidiary findings, so far as material, are as follows: When Albert Smerczynski and his wife bought the Maroney house, a board gate was built at the end of the way on Webb Street, and some controversy occurred as to the use of the way; afterwards the gate was opened, and no further interference was ever attempted during the life of Mr. Smerczynski. One Boucher during

the years 1906 and 1907 lived in the house now owned by the plaintiff. One Knox testified that Boucher used a two-wheeled push cart in his business, and stored it in his rear yard, pushing it in and out of the way through the gate. Boucher had coal brought in also in the same manner, and after he vacated the house Knox moved in and had coal put in through the rear cellar window, which opens from the rear yard. At one time Mrs. Smerczynski kept locked padlocks on the closed gates at the Webb Street end of the way. For many years she maintained a flower garden along the easterly side of the way. During the summers of 1917 and 1918 she used the entire way for a vegetable garden, and for several years thereafter it was sowed to grass, and only a plank walk was used to get to and from Webb Street. From a time not earlier than September 30, 1908, she and her successors in title have denied that the owners or occupants of the plaintiff's house have any rights in the way, and "for approximately the same period of time, this denial has been acquiesced in" by the plaintiff and her predecessors in title. We are of opinion that this finding of acquiescence on the part of the plaintiff and her predecessors in title is inconsistent with the other facts found by the master and hereinbefore referred to.

The ultimate finding of the master in his supplemental report is as follows: "This period of abandonment and of repudiation, however, has been of many years' duration and since its beginning, has been complete and uninterrupted. It had not continued for a full period of twenty years prior to the filing of the plaintiff's bill, but had continued for at least seventeen years, and possibly for nineteen years." Whether the acts done by the owner of the dominant tenement or under his expressed authority amount to an intent to abandon the way is usually a question of fact. When the ultimate finding of a master is inconsistent or contradictory to his subsidiary findings that finding is not conclusive. *Willets* v. *Langhaar*, 212 Mass. 573, 575, and cases cited. The subsidiary findings of the master do not make out a case of abandonment by the plaintiff or her predecessors in title of the easement in the right of way as matter of law. At the

most they show merely a nonuser. "Mere non-user does not conclusively impair or defeat an easement created by deed. In order to have such an effect there must be an element of adverse use by the owner of the servient estate inconsistent with the continuance of the easement, or acts by the owner of the dominant estate of such conclusive and unequivocal character as manifest a present intent to relinquish the easement or such as are incompatible with its further existence. Whether there has been an abandonment is usually a question of fact." *Willets* v. *Langhaar, supra. Butterfield* v. *Reed,* 160 Mass. 361, 369. *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365, 379. *Parsons* v. *New York, New Haven & Hartford Railroad,* 216 Mass. 269, 272. *Dubinsky* v. *Cama,* 261 Mass. 47, 57.

In *Barnes* v. *Lloyd,* 112 Mass. 224, the right of way involved was fenced off from the adjoining road, and from direct access from the dominant tenant. The nonuser had extended over a period of many years. There was evidence from many witnesses who testified·that as long as they could remember the strip of land in question "had been every year either plowed, sowed, mowed, planted, or cultivated" by the owner of the servient tenement, or those under whom he held, without objection by any one. These witnesses lived in the neighborhood and several of them were former owners of the strip. It was held that on the facts the easement originally created by grant continued to exist although more than twenty years had elapsed, as it did not appear that the nonuser was as a consequence of something which prevented the user or was utterly inconsistent with its enjoyment. Upon the facts found in the present case it is plain that the plaintiff's rights in the way have not been extinguished by adverse user. *Hewitt* v. *Peterson,* 253 Mass. 92, 94. The fact that the plaintiff had nailed up and permanently fastened the old gate as a fence is not sufficient to show an intention to abandon any rights she then had in the way. *Hayford* v. *Spokesfield,* 100 Mass. 491, 495. *Vinton* v. *Greene,* 158 Mass. 426. *Bornstein* v. *Doherty,* 204 Mass. 280, 284. It follows that a decree in favor of the plaintiff was warranted.

As the "Order for Final Decree" grants prayer numbered

6, which does not appear in the bill, the order is to be corrected in that respect. The "Order for Final Decree" grants prayer numbered 3, which is a general award of damages to the plaintiff. It does not appear from the record that the plaintiff's damages have been ascertained. A decree is to be entered in accordance with prayers 2 and 4, and directing that the case be heard further for the assessment of damages.

*Ordered accordingly.*