Louis J. Catania vs. T. Clark Hallisey & others.[1]

Barnstable.    March 10, 1967. — April 4, 1967.

Present: Wilkins, C.J., Whittemore, Cutter, Spiegel, & Reardon, JJ.

Contract, Of employment, Performance and breach, Agreement not to compete.

Subsidiary findings by a master in a suit in equity supported his conclusions that the plaintiff, after entering into an agreement with the defendants to furnish continuous general supervision of their restaurants and to use his "best efforts in the promotion and management" thereof, broke the agreement by giving the restaurants less time and attention than they reasonably required and were entitled to, and was justifiably discharged by the defendants.    [330–331]

Where an agreement between a supervisor of restaurants and the corporations owning them provided as to each corporation that the agreement was to be in force so long as the corporation "shall operate the business now on . . . [its leased] premises, or for the term of the lease now held . . . whichever is the shorter," and that "no similar type restaurant . . . shall be opened or . . . conducted by any of the parties" within a radius of ten miles of any restaurant then owned or operated by any party, it was held that a reasonable time within which the covenant not to compete would be enforceable would be the duration of the then existing terms of the actual occupancies of the corporations under the existing leases.    [331]

Bill in equity filed in the Superior Court with a writ of summons and attachment dated July 30, 1964.

The suit was heard by Hudson, J., on a master's report.

Warren G. Miller (Joseph S. Tangusso with him) for the plaintiff.

Marshall M. Dranetz for the defendants.

Cutter, J.    Catania, an operator of restaurants serving Italian foods, seeks declaratory relief concerning his rights under an employment contract.    The case was referred to a master whose report was confirmed (with an exception not now relevant).    Catania appeals from a final decree declaring (a) that Tastee, Inc. (fn. 1) owes Catania $379.19,

---

[1] Tastee, Inc. which is a Massachusetts corporation with a place of business in West Yarmouth, Tastee, Inc. of Dennis Port, and Amherst Tower, Inc.

(b) that Tastee, Inc. of Dennis Port (Dennis) owes Catania $337.80, (c) that Catania's employment under the contract was justifiably terminated, and (d) that all other obligations of the parties to the contract are "of full force and effect." These obligations would include a covenant (later described) by Catania not to compete with the three corporate enterprises (fn. 1). The facts are stated as found by the master.

Catania devised a type of pizza shop in the shape of a plain tower and adopted the name "Tastee Tower." He and the defendant Hallisey entered into a pizza shop operation in Falmouth and he later sold his half interest in this to Hallisey. He sold to Hallisey and his brother such a shop in Amherst, now owned by Amherst Tower, Inc. Tastee, Inc. owned a similar shop in West Yarmouth and Dennis operated such a shop in Dennisport.

In 1963, Catania personally spent several hours daily in each shop, supervising them, purchasing food and supplies, hiring and discharging employees, "seeing that quality foods were served" properly, and "handling all of the logistical problems which constantly arose. The detail and day to day management was carried on through day and night managers in each shop."

On May 22, 1964, all the parties entered into a handwritten agreement. Under this agreement Catania was to transfer to Hallisey all the capital stock of Tastee, Inc. and Hallisey was to acquire under an outstanding option all of Dennis's capital stock, subject to all the obligations of these corporations not to exceed $90,000. If the obligations were less than $90,000 Hallisey was to pay Catania the difference. The stock was transferred. Catania agreed with respect to these two shops "to act as [g]eneral [s]upervisor and [m]anager to . . . Dennis . . . and Tastee, so as to insure the . . . efficient operation of . . . [their] restaurant businesses . . . . Catania's services shall include his . . . best efforts in the promotion and management of . . . [their] businesses. . . . Dennis . . . and Tastee agree to employ an 'on-the-job' local manager or managers, to see to the day-to-day operation of their business, subject,

however, to Catania's supervision, not intending hereby
to relieve Catania of any responsibilities encumbent [sic]
upon him as [g]eneral [s]upervisor and [m]anager. This
Agreement does not intend that Catania shall devote his
full time in performance of his duties set forth herein, pro-
vided he complies with the provisions above.''

For these services Catania was to be paid four per cent
of Dennis's and Tastee's weekly gross sales. He ''also
agreed in this contract to perform the same services for the
Amherst shop. For this he was to receive no additional
compensation but was to be paid his expenses.'' The con-
tract was to be in force so long as ''the corporation in-
volved . . . either Dennis . . . or Tastee, shall operate the
business now on said premises, or for the term of the lease
now held . . . whichever is the shorter.''[2]

The agreement became effective June 1, 1964. Before
that date, Catania had ''hired some help.'' From June 2
to 8, 1964, he was in a hospital from which by telephone he
did some business with suppliers of food and materials.
After June 1, he ''attempted to obtain the services of sev-
eral other employees at Dennisport and West Yarmouth to
work for him'' in a new shop which he was planning to open
in Connecticut.

From June 8 to July 21, he visited West Yarmouth and
Amherst about once each week for short periods and the
Dennisport shop about six times. Some of his time was
spent on his own business. He ''also telephoned all three
places.'' On some visits to West Yarmouth and Dennis-
port ''he had prospects for . . . [Tastee Tower] franchises
with him in order to acquaint them with the operation.''
During his visits he ''made suggestions to the manager and
employees with respect to their duties.''

During the period June 8 to July 21, in 1963 and 1964,
the management arrangements at West Yarmouth and Den-
nisport were substantially the same. Catania, however,

---

[2] The master indicates that this provision refers (a) to Tastee, Inc.'s West
Yarmouth operation where the existing lease expires on May 17, 1970, with a
somewhat complicated option to renew which need not be stated, and (b) to
Dennis's lease expiring February 17, 1973, with a similar renewal option.

Catania *v.* Hallisey.

spent far less time at each of these shops in 1964 than he did for the comparable period in 1963. There was little, if any, difference in the need for his services (to insure the continuous and efficient operation of these shops) in 1964 from what there was in 1963.

Dennis's shop had been closed during the winter. It opened June 12, 1964. The gas had not been turned on. There were no supplies. There was insufficient help. The West Yarmouth shop had been operating all winter. On June 1 it was dirty. It required several days to clean it. The board of health required certain fans. "When the matter was called to his attention . . . [Catania] told the manager to 'con' the board of health along, and . . . to order the fans."[3] Catania "made statements that Hallisey was not going to get rich by his . . . [Catania's] sweat and . . . was not going to get the Dennisport store open." He "was fired by Hallisey by a written notice dated July 21, 1964." There were findings justifying the final decree so far as it related to the amounts due to Catania through July 21, 1964, for services.

The master concluded that Catania "did not use his best efforts as general supervisor and manager" and "in the promotion and management of" the Dennisport and West Yarmouth businesses. He also concluded, as far "as it is a question of fact, that the discharge of . . . [Catania] was warranted."

1. The master's subsidiary findings justified his conclusions. Although the agreement did not contemplate that Catania would handle the routine details of the several business operations, it did require him in effect to provide continuous supervision. His 1963 conduct in some degree provided a standard for the conduct appropriate in 1964. We assume that, as he was no longer owner of any of the

---

[3] In both places numerous details needed to be coördinated quickly to get these shops in operation for the approaching summer season. There was a cesspool problem which Catania should have taken up with the landlord of the Dennisport shop. His personal services with respect to recipes and quality control were not furnished. There were problems with juke boxes and with a public address system. He purchased supplies at prices higher than needed to be paid. An unsatisfactory bookkeeper was transferred to routine advertising work at needless expense to the businesses.

businesses, the agreement permitted some measure of relaxation of his 1963 activity. The subsidiary findings justified the conclusion that Catania was giving these businesses less time and attention than they reasonably required and than that to which the enterprises were entitled.

2. The agreement of May 22, 1964, contained the following provision, ''All parties agree that no similar type restaurant . . . shall be opened or . . . conducted by any of the parties, directly or indirectly, within a radius of ten . . . miles of any existing such unit owned or operated by any of the parties hereto as of this date.'' Catania contends that this is unenforceable because it provides no time limit. We read it as limited reasonably in time by the duration of the then existing terms (without regard to renewals under options) of the actual occupancies of Tastee, Inc. and Dennis under the existing leases described by the master. See *Childs* v. *Sherman,* 351 Mass. 450, 456. (In the absence of a more explicit provision, such a covenant will be enforced for a ''reasonable time'').

3. The master's report contains no findings affording a basis (a) for any claim by Catania to restitution of the shares transferred by him, or (b) for computing the damages suffered by the defendants from Catania's default in the performance of his agreement, or any other facts relevant to a claim for restitution. The burden was on Catania to show the facts entitling him to restitution. So far as appears from this record, he made no proof whatsoever on this issue and the bill for declaratory relief makes no allegations of facts raising this issue. There was no motion to recommit the master's report for findings relevant to any issue of restitution. There is no occasion for us to consider these issues (see Restatement: Contracts, § 357; Corbin, Contracts, § 1127), which appear to have been raised for the first time on appeal from the final decree. See *Foster* v. *Everett,* 334 Mass. 14, 18; *Henchey* v. *Cox,* 348 Mass. 742, 747.

4. The final decree is affirmed. The defendants are to have costs of appeal.

*So ordered.*