LILLIAN T. VINCENT vs. BRADFORD M. TORREY & another.[1]

Middlesex. January 9, 1981. — February 26, 1981.

Present: GRANT, CUTTER, & NOLAN, JJ.

*Deed*, Consideration, Rescission. *Contract*, Performance and breach, Personal service, Rescission.

In an action to set aside a deed by which the plaintiff and her husband conveyed their property to themselves and the defendants, their daughter and son-in-law, as joint tenants in consideration of the defendants' agreement to care for the plaintiff and her husband, findings were warranted that there had been a total failure of the intended consideration and that the defendants had not in good faith intended to care for the plaintiff and her husband when they accepted the deed, and the plaintiff was entitled, therefore, to rescission of the deed by way of restitution. [466-467]

In an action to set aside a deed by which the plaintiff and her husband conveyed their property to themselves and the defendants, their daughter and son-in-law, as joint tenants in consideration of the defendants' agreement to care for the plaintiff and her husband, the defendants could not raise for the first time on appeal a claim that they were entitled to compensation for their services on a quantum meruit basis. [467]

Two CIVIL ACTIONS commenced in the Probate Court for the county of Middlesex on March 8, 1977, and September 8, 1977, respectively.

The cases were consolidated and were heard by *Ginsburg, J.*, on a master's report.

*Alanna G. Cline (Robert L. Shuman* with her) for the defendants.

*John B. Hopkins* for the plaintiff.

CUTTER, J. In a Probate Court, Mrs. Vincent sought to set aside a 1975 deed from her and her late husband (the

[1] Nathalea V. Torrey.

Vincents) to themselves and her daughter, Nathalea Torrey, and her husband (the Torreys) of an interest in a house and land on Rutland Street in Carlisle (the Rutland Street property), "as joint tenants and not as tenants in common or tenants by the entirety." This case (brought September 8, 1977) was consolidated in 1979 with an earlier petition, filed by the Torreys, for partition of that land. Both matters were referred to a master whose report was adopted. A judgment granted relief to Mrs. Vincent in general along lines recommended by the master. The Torreys have appealed. The following statement of the case is based upon the master's subsidiary findings and admitted allegations of the pleadings.

In 1975, Mrs. Vincent and her late husband lived on, and owned as tenants by the entirety, the Rutland Street property. Each of them was over eighty and seriously infirm. The husband had lost one leg. Each of them suffered from serious diabetes. Vincent died on June 28, 1977.

In August, 1975, Mrs. Vincent became concerned about the problems of caring for herself and her husband and about neighborhood security. Despite earlier difficulties, when the Torreys for fifteen years had lived near the Vincents and eventually were evicted for nonpayment of rent to the Vincents, Mrs. Vincent asked the Torreys to move to the Rutland Street house. After some discussions, the Vincents reached an arrangement with the Torreys. The Torreys "would move in if they received a deed to a one half interest in the Rutland Street property, with a promise of the balance at the Vincents' death." The Torreys, so the master found, "understood that" they were to "care for . . . [the Vincents], to keep up the house, to provide security, and to share expenses" and real estate taxes. Mrs. Vincent understood that the 1975 transaction "meant that the Torreys would come in to take care of the Vincents, would look after the property, would make life agreeable, take the Vincents to the hospital when necessary [and] get the shopping done." The master made no express finding that Mrs. Vincent's understanding was shared by the Torreys but we infer

from all the subsidiary findings that, in this special type of arrangement between a child and her parents (see *Rayner* v. *McCabe* 319 Mass. 311, 314 [1946]; 12 Williston, Contracts § 1456, at 36 [3d ed., 1970]; 5 Corbin, Contracts § 1120, at 640-645 [1964]), all Mrs. Vincent's expectations were implicit and included in the Torreys' obligation "to care for" the Vincents.

A lawyer retained by Nathalea Torrey (who regarded her as his client) drew the deed, already mentioned, of the Rutland Street property from the Vincents to themselves and the Torreys. The consideration stated was "love and affection." The deed was executed on September 27, 1975, and the Torreys moved to the Rutland Street property in December, 1975.

The master's subsidiary findings establish that "[e]ssentially two separate households were maintained . . . from that point on" and that Torrey (and to a lesser extent Nathalea) engaged in an inconsiderate, disagreeable course of conduct and in various forms of unkind and unreasonable (and occasionally somewhat violent) behavior toward the Vincents. This conduct, some of which appears to have been intentional, need not be recounted in detail. The master also found that the Torreys have never paid any part of the real estate taxes and failed to pay their share of the utility bills until after the first eight months. The subsidiary findings disclose some limited areas of performance by the Torreys of their obligations under the arrangement, at least in the early months, and that Mrs. Vincent engaged in some not very serious "retaliatory" conduct. The findings also reveal her to have been not an easy person with whom to deal. Nevertheless, in the aggregate, the subsidiary findings disclose a very substantial failure of the Torreys reasonably to "care for" the Vincents.

Another daughter of Mrs. Vincent, Barbara Trainor, and her husband (the Trainors), tried to protect her mother and took some steps to take care of her. For that purpose, on the advice of another lawyer, the Trainors received a deed (executed February 3, 1977) from the Vincents of the half in-

terest in the Rutland Street property still in the Vincents'
name, subject to the reservation by the Vincents of life es-
tates. After the execution of this 1977 deed, the Trainors
moved to the Rutland Street house. The Torreys shortly
thereafter left the house which, at Mrs. Vincent's earlier re-
quest, they declined to do. The Trainors changed the locks
and thereafter excluded the Torreys.

1. The order of reference to the master required him to
file a transcript of the evidence only "if available." There
has been no showing that a transcript is available or even
that a stenographer was appointed. The master's subsidiary
findings must be accepted unless, on the face of the record,
they are mutually inconsistent or plainly wrong. See
*Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659,
660 (1975); *Jones* v. *Wayland*, 374 Mass. 249, 254-255 & n.5
(1978). The subsidiary findings appropriately might have
been more detailed in stating the dates and sequence of
events and in some respects more incisive. We think them,
however, an adequate basis for deciding this matter and
draw our own inferences and conclusions from the subsidi-
ary findings. *John F. Miller Co.* v. *George Fichera Constr.
Corp.*, 7 Mass. App. Ct. 494, 495-496 (1979). See also
*Tracy* v. *Curtis*, 10 Mass. App. Ct. 10, 16-17 (1980).

2. We conclude, from the subsidiary findings and the
reasonable inferences to be drawn from them, that the
master's ultimate findings are justified by his findings con-
cerning the Torreys' conduct viewed as a whole. From his
subsidiary findings we draw the conclusion that there "has
been a total failure of the intended consideration for the
. . . 1975 deed," that the Torreys "would be unjustly en-
riched if . . . allowed to retain the . . . interest" thereby
conveyed to them, and that such retention would be "un-
conscionable." There is substantial basis in the conduct of
the Torreys for the master's further conclusion that the
"Torreys did not in good faith intend to live amicably with
and help the Vincents at the time they . . . accepted" the
1975 deed.

We need only decide that rescission (or, perhaps more accurately, restitution) is available as relief on the ground of the serious failure of the continuing consideration to be provided for the Vincents' 1975 deed, without going into other grounds of relief. (see e.g. 5 Corbin, Contracts, *supra* at 640-644) sometimes relied upon in the decisions. See *Harvey* v. *Crooker*, 267 Mass. 279, 283-285 (1929); Restatement of Contracts § 354, Illustration 1, at 613 (1932); 12 Williston, Contracts, *supra* at 35-40. See also *Rayner* v. *McCabe, supra* at 313-314; *Durgin* v. *Allen*, 324 Mass. 157, 160-161 (1949). Compare *DeAngelis* v. *Palladino*, 318 Mass. 251, 256-257 (1945). For decisions in other jurisdictions which are consistent with the result reached in this case see *Bradecich* v. *Rivard*, 411 Ill. 214, 218-220 (1952); *Payne* v. *Winters*, 366 Pa. 299, 307-308 (1951); *DeLance* v. *Hennessey*, 137 Vt. 214, 216-217 (1979). See also 1 Palmer, Restitution § 5.13, at 656 (1978).

3. The Torreys now contend that they are entitled to be compensated for "their relocation, sacrifice, loss, effort, and services," apparently on a quantum meruit basis. The master's findings were too general to permit any determination of the value of any net benefits accruing to the Vincents from the presence of the Torreys at the Rutland Street house, and their removal to that house. The master found only that Torrey shoveled snow in the winter, cut the grass in the summer, and performed minor services for Vincent, including taking him "to the hospital . . . in the early months," during which Mrs. Torrey also took her mother shopping. The Torreys did not include their present contention (that they are entitled to compensation on a quantum meruit theory) in any articulate form in their late-filed objections to the master's report, which were overruled. This contention cannot be presented for the first time on appeal. See *Catania* v. *Hallisey*, 352 Mass. 327, 331 (1967); *Springfield Preservation Trust, Inc.* v. *Springfield Historical Commn.*, 380 Mass. 159, 161 (1980).

4. The probate judge merely adopted the master's report, Mass.R.Civ.P. 53(e)(2), 365. Mass. 820 (1974), and

directed that "the parties are to comply with . . . the [m]aster's [r]eport . . . incorporated . . . [in] the judgment." The judgment should have contained more precise instructions about the relief to be granted, such as (a) that, because of the failure of consideration for the 1975 deed, that deed by way of restitution is declared cancelled and rescinded, and (b) that a copy of the judgment (and of any reconveyance ordered if and when available) is to be placed on record in the appropriate registry of deeds. Additionally, the judgment may include an order that a reconveyance and release of the Rutland Street property by the Torreys to Mrs. Vincent or her estate, heirs, or personal representative, shall be executed before a date certain, if that is deemed advisable to clarify the record title. After hearing, the judgment shall be appropriately modified. A judgment dismissing the petition for partition may be entered, if that has not been done already as the docket suggests.

*So ordered.*