GEORGE A. FLETCHER *vs.* JAMES W. BARTLETT & others.

Suffolk.　January 27, 28, 1892. — September 7, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Decree of Single Justice — Dissolution of Partnership — Agreement to purchase Assets and Good Will — Agency — Fiduciary Relation — Purchase of Partner's Interest.*

It is a well settled rule that the decree of a single justice of this court will not be reversed or modified unless it clearly appears to have been erroneous.

A partnership consisting of A. and B. was dissolved by B.'s giving notice of his intention to dissolve, and filing a bill for dissolution. A., relying upon a supposed agreement with C. to assist A. in purchasing the business and good will, agreed to a decree dissolving the firm, appointing B. receiver, and providing a mode of sale of certain partnership assets, including the good will. C. withdrew from the arrangement. A day having been fixed by the court for the sale by auction, A. applied to D., who introduced A. to E., and the latter, having examined into the affairs of the firm, proposed to A. to pay a certain sum for his interest; but when the written agreement was produced, it ran to D. instead of E., and it was then signed, on March 31, by both A. and D without objection from A. The agreement fixed the price at $10,000, provided for additional compensation to A. in case D. should purchase B.'s interest and form a corporation, and stipulated that A. was to sell and D. was to buy for $30,000 certain real estate. On the same day A. gave D. a bill of sale of his interest in the business, with a power of attorney to D. to act for A. in the suit of B. against A., and binding A. to aid D. in purchasing at the sale appointed by the court. D. having in April made demand on A. for a conveyance of the real estate, A. executed with his wife a bond agreeing to convey the same. There was no fraud or misrepresentation on the part of D. or E. in procuring either of these instruments. The sale occurred on April 2. Previously D. without the knowledge of A. had interviews with C., who was anxious to acquire the property. On March 31, D. without the knowledge of A. signed an agreement with C., and C. gave D. $10,000, and D. supposed that he was to act as C.'s agent at the sale. On April 1, the form of the agreement was changed, to the effect that the $10,000 should be a loan. The property was bid off at the sale to D. for $150,000, and C. declined to take it. D. paid the $15,000 required by the terms of sale, and then sold the property for $150,000 to a corporation in another State. A. some time after claimed that the relation between him and D. was one of trust and confidence, and brought a bill in equity against D. for an account. *Held*, that the relation between A. and D. was not a fiduciary one, that D. was not employed by or acting for A. as his agent, and that the bill could not be maintained.

MORTON, J. This case was heard by a single justice, and comes here on the plaintiff's appeal from his decree dismissing the bill with costs. The evidence, which was largely oral, is reported in full. The well settled rule in such cases is that the

decree of the single justice will not be reversed or modified unless it clearly appears to have been erroneous. We think, after careful examination of the testimony, that the decree was justified by it, and was not erroneous.

The plaintiff and one Young were in company together in the cracker business. Young gave the plaintiff notice of his intention to dissolve the firm, and afterwards filed a bill for a dissolution and a settlement of the affairs of the firm and the appointment of a receiver. The plaintiff applied to one Kennedy to assist him in purchasing the business and good will of the firm, which he claimed was very valuable, and, relying upon a supposed arrangement with Kennedy, agreed to the entry of a decree dissolving the firm and appointing Young receiver, and providing a mode in which certain of the partnership assets, including the good will, should be sold. Afterwards, Kennedy withdrew from the arrangement. Before the agreement with Kennedy the plaintiff had endeavored to enlist other persons in the purchase. After Kennedy's refusal to go on, he tried again, but without success. In the mean time a day had been fixed by the court for the sale of the partnership assets, including the good will. In this situation the plaintiff applied to the defendant Bartlett for help. He said he had no money, but he introduced the plaintiff to one Thompson, a capitalist. Several interviews took place between the plaintiff and Thompson and Bartlett. All three visited the place where the business had been carried on, and such examination into the affairs of the firm was made by Thompson and Bartlett as might naturally have been expected. Finally, Thompson proposed to the plaintiff to pay a certain sum for his interest in the business, and the plaintiff agreed to the terms named by Thompson. Those were reduced to writing; but when the written agreement was produced, it ran to Bartlett instead of to Thompson. The plaintiff does not appear to have objected to that, and it was signed by the plaintiff and Bartlett. The agreement fixed the price, $10,000, for the plaintiff's interest in the business, and also contained provision for additional compensation to the plaintiff in case Bartlett should purchase the interest of Young, and a corporation should be formed to take the property. There was also embraced in it a stipulation that the plaintiff was to sell

and Bartlett was to buy for $30,000 certain real estate belonging to the plaintiff. This agreement, though bearing date March 29, was not executed till March 31. On the same day the plaintiff also executed and delivered to Bartlett a bill of sale of all his right, title, and interest in the business, containing a power of attorney to Bartlett to act for the plaintiff in all things relating to the suit of Young against the plaintiff, and also binding the plaintiff to aid Bartlett in purchasing at the sale appointed by the court. In April Bartlett made a demand on the plaintiff for a conveyance of the real estate specified in the agreement of March 29. The plaintiff, after some objection, executed with his wife a bond agreeing to convey the property. There does not seem to have been any fraud or misrepresentation on the part of either Bartlett or Thompson in procuring from the plaintiff either of these instruments. So far as the plaintiff was concerned, the transaction appears to have been a sale by him of property of the value of which he was well aware, and with whose situation he was well acquainted, upon terms and under circumstances which he thoroughly understood, and to which he was not induced by any fraud or misrepresentation on the part of either Thompson or Bartlett. After Bartlett's supposed arrangement with Kennedy had proved illusory, and Bartlett found himself individually liable for the whole purchase price, with a chance of losing $15,000 unless he paid the $150,000 within the time set, the plaintiff did not offer to release Bartlett or treat the transaction as anything else than a sale and purchase. It was not till some time after that he made the claim which he now makes, which is that the relation between him and Bartlett was one of trust and confidence; that Bartlett could not purchase or become interested as a purchaser in the property without a full disclosure to the plaintiff of all circumstances favorably affecting the property; and that he concealed from him the fact that he was interested with Thompson in the purchase, and also concealed the negotiations with Kennedy and Kennedy's opinion of the value of the business.* So far as the plaintiff goes on the ground that

---

* The sale occurred on April 2. Previously thereto Bartlett, without the knowledge of Fletcher, had interviews with Kennedy, who expressed a desire to obtain the property. On March 31, after the signing of the agreement of

Bartlett acted as his agent or trustee, the case would seem to be no stronger than that of the plaintiff in *Collins* v. *Sullivan*, 135 Mass. 461. The plaintiff applied to Bartlett as a friend, and he undertook to assist him as such. Even if the transaction possessed a fiduciary color, which is the most that can be said of it, there was nothing in this to prevent Bartlett from becoming a purchaser, and there was testimony tending to show that the plaintiff learned without objection that Bartlett was interested with Thompson as a purchaser, and that he made no objection to Bartlett's being the sole purchaser after Thompson had dropped out. Bartlett testified that he told the plaintiff Thompson had dropped out, and said that he did not suppose it made any difference to him· (the plaintiff) so long as he got his money, to which the plaintiff assented. It is impossible to say that the concealment by Bartlett of his negotiations with Kennedy operated to the prejudice of the plaintiff. The plaintiff knew that Kennedy placed a high value upon the business, and that at one time he had contemplated purchasing it. The possibility, if the plaintiff had been informed of the negotiations, that he or his counsel could have made satisfactory arrangements with Kennedy, is too remote and speculative to be made the ground of liability, especially in view of their actual issue. But we do not think the relation between the plaintiff and Bartlett was a fiduciary one. Bartlett was not employed by or acting for the plaintiff as his agent. He did not hold the property as trustee. That belonged to and was in the possession of the plaintiff. The relation between them grew in the first instance out of the gratuitous assistance which Bartlett undertook to render in response to the plaintiff's application, and that, legally speaking, did not con-

---

Fletcher and Bartlett, the latter signed an agreement with Kennedy, and Kennedy gave Bartlett a deposit of $10,000, and it was agreed that Bartlett was to act as Kennedy's agent at the sale. On the following day, April 1st, the form of the agreement was changed to the effect that the $10,000 was a loan. The property was bid off to Bartlett at the sale for $150,000, and Kennedy, who Bartlett supposed was backing him, declined to take the property. The terms were ten per cent at the time of the sale, and Bartlett raised $5,000 besides the $10,000 which he had obtained from Kennedy, and Bartlett then sold the property to the New York Biscuit Company for $150,000.

stitute a fiduciary relation. *Haygarth* v. *Wearing,* L. R. 12 Eq. 320.

Bartlett was bound to avoid fraud or misrepresentation, and to deal fairly and in good faith with the plaintiff. The concealment of his interview and negotiations with Kennedy constituted neither fraud nor lack of good faith or fair dealing; and, as already observed, there does not seem to have been any fraud or misrepresentation in the execution of the different instruments. Indeed, the plaintiff lays his main stress upon the breach by Bartlett of alleged fiduciary obligations.

This case would seem to have been one peculiarly adapted to friendly adjustment. By an unexpected turn, Bartlett has realized a large amount of money out of property which formerly belonged to the plaintiff, and in which Bartlett became interested only through a willingness to aid the plaintiff, who was a friend of many years' standing. It is not surprising that the plaintiff should have felt, as there is testimony tending to show counsel for Bartlett has felt, that Bartlett was honorably under some obligation to him. We cannot, however, take such considerations into account, but must dispose of the case in accordance with the rules by which such cases are governed.

*Decree affirmed.*

*G. A. O. Ernst,* for the plaintiff.

*R. M. Morse,* (*W. M. Richardson* with him,) for the defendant Bartlett.