CHARLES P. ABBOTT *vs.* WILLIAM K. BEAN & others.

Suffolk.    December 12, 1933. — February 28, 1934.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Contract*, What constitutes, Construction. *Trust*, What constitutes. *Equity Pleading and Practice*, Amendment, Appeal.

The bill in a suit in equity contained allegations that the defendant, after being requested by the plaintiff to obtain for him an option to buy certain land, procured the making of an agreement between the landowner and a nominee of the defendant providing that the nominee was to buy the land at a certain price, the purchase to be completed

on the following July 1, and that, if the land were taken by eminent domain previous to July 1, damages for the taking in excess of the stated purchase price and counsel fees should belong to the purchaser; that shortly thereafter the defendant's nominee assigned the agreement to the defendant and the defendant under seal assigned to the plaintiff seventy per cent of the "net profits" realized by reason of the agreement; that the plaintiff did nothing to cause such purchase to be carried out; that on July 1 the defendant in his own name made a new and similar agreement of purchase with the landowner which, because of extensions made, was not to expire until after October 1; that on October 1 the land was taken by eminent domain and damages were awarded substantially in excess of the purchase price stated in both agreements; and that the damages awarded subsequently were paid to the landowner, who paid over to the defendant's representatives the purchaser's share thereof. The plaintiff sought to compel payment to him of seventy per cent of such share. *Held*, that

 (1) The plaintiff's rights were based on the assignment to him by the defendant and such rights expired on July 1;

 (2) When the defendant made the new agreement with the landowner on July 1, he was not acting as agent for the plaintiff or in a fiduciary relation to the plaintiff;

 (3) The suit could not be maintained.

Representations to the plaintiff by the defendant in the suit above described, beginning on or before July 1, to the effect that the defendant had obtained extensions of the first agreement continuing it in force until a date early in October, did not aid the plaintiff because he did not rely on them to his harm.

The propriety of an exercise of discretion in the denial of a motion for leave to amend the bill in a suit in equity is brought to this court upon an appeal by the plaintiff from such denial.

*It seems* that this court, upon such an appeal, will give weight to the manner in which discretion was exercised by the judge who denied the motion.

Where, after the plaintiff in a suit in equity had been given leave twice to amend the bill, he was permitted to file a substitute bill basing his case on a ground which, as he thought, would entitle him to recover a certain sum of money and omitting from the substitute bill allegations concerning a different ground upon which he could have recovered only a smaller sum; and subsequently, after the sustaining of a demurrer to the substitute bill, he sought leave by motion to file an amended substitute bill setting forth the ground so omitted previously, there was no abuse of discretion in a denial of the motion; furthermore, in the present case, the motion was filed more than ten days after the sustaining of the demurrer, and no leave to file it was given.

BILL IN EQUITY, filed in the Superior Court on November 23, 1932.

The plaintiff was permitted to amend the bill on November 30, 1932, and again on February 28, 1933. On

May 19, 1933, a motion for leave to file a substitute bill was allowed. The substitute bill is described in the opinion. Certain of the defendants demurred. The demurrers were heard by *F. T. Hammond*, J., by whose order an interlocutory decree sustaining them was entered on June 5, 1933. The plaintiff appealed from the decree on June 26, 1933.

On June 23, 1933, the plaintiff filed a motion for leave to file an amended substituted bill, which was denied by the judge "in the exercise of . . . [his] discretion" on June 28, 1933. The plaintiff appealed from an interlocutory decree entered in accordance with such order.

On July 14, 1933, a final decree dismissing the bill was entered by order of the judge, and the plaintiff appealed.

*R. B. Owen*, (*A. S. Lawrence* with him,) for the plaintiff.

*C. Hamilton*, for the defendants.

LUMMUS, J. This case comes here on appeal from a final decree dismissing the bill after the sustaining of demurrers filed by the defendants Bean and Hamilton. The case made by the bill is as follows. Early in 1932 the plaintiff asked the defendant Bean to obtain for the plaintiff an option to buy the premises at 115–119 North Street in Boston, owned by Herbert B. Pettee and A. Bertha Pettee. Bean obtained instead a written agreement, dated April 5, 1932, in which the buyer was one Hyman Yaffe, who was acting for Bean. This agreement was hardly more than an option, because it provided that if the buyer should fail to perform his part the agreement should be void. The price was $85,000, and it was provided that if during the pendency of the agreement the premises should be taken by eminent domain all damages in excess of the purchase price and counsel fees should belong to the buyer. The purchase was to be completed on July 1, 1932.

On April 18, 1932, Bean assigned to the plaintiff under seal "seventy per cent (70%) of the net profits earned and/or realized out of and from said agreement" between the Pettees and Yaffe, which agreement Yaffe had already assigned to Bean.

Beginning on or before July 1, 1932, Bean kept inform-

ing the plaintiff that he had obtained extensions of the agreement dated April 5, 1932, the last extension being to some date early in October, 1932. It was not until after November 23, 1932, that the plaintiff discovered that on July 1, 1932, Bean had obtained from the Pettees a new agreement in his own name to buy the premises for $85,000, upon somewhat different terms, but with the same provision as to a possible taking by eminent domain, and that the new agreement, because of an extension, did not expire until October 14, 1932.

On October 1, 1932, the city of Boston took the premises by eminent domain, and awarded damages of $134,000, which it paid to the Pettees on October 19, 1932. On that day, the Pettees paid over the buyer's share of the damages, amounting to $46,091.50, to the defendant Hamilton as attorney for Bean. The defendant Hamilton told the plaintiff that he was holding that sum as the joint property of the plaintiff and Bean, but has refused to pay any of it to the plaintiff. Instead, he has turned over $20,000 of it to the defendants Poland and Davis, attorneys, and another $20,000 to the defendant Leahy, another attorney, with intent to place said sums beyond attachment by the plaintiff. The prayers were for a decree against Bean "for the plaintiff's share of said profits," and an injunction against the attorneys to prevent them from disposing of the money paid to them.

The demurrers were rightly sustained. If the original procurement of the agreement or option gave the plaintiff any rights in the absence of any allegation of employment or consideration (*Collins* v. *Sullivan,* 135 Mass. 461, 462, 463; *Fletcher* v. *Bartlett,* 157 Mass. 113; *Clark* v. *Delano,* 205 Mass. 224), the plaintiff accepted as a definition of his rights the assignment of April 18, 1932. Thereafter the plaintiff had even greater interest than Bean in carrying out the agreement to buy. Apparently he did nothing to raise the necessary money, but rested in the hope that a taking would be made before the expiration of the agreement. It is not alleged that any representations or conduct of Bean caused the plaintiff to omit to raise the pur-

chase price of $85,000 required on July 1, 1932. On that day the plaintiff's rights expired. When Bean took a new agreement in his own name on July 1, 1932, Bean was not acting as agent of the plaintiff to negotiate any option. No fiduciary relation then existed between the plaintiff and Bean. The alleged misrepresentations of Bean as to the extension of the agreement of April 5, 1932, were not relied on by the plaintiff to his harm, so far as the bill shows.

After the demurrers were sustained, the plaintiff moved to amend by the substitution of a new bill, and appealed from an interlocutory decree denying the motion to amend. Striking differences appear between the proposed bill and the earlier one. The proposed bill asserts that, (apparently in July, 1932,) the plaintiff agreed to accept fifty per cent instead of seventy per cent as his share of the profits, and, further, that on or about September 14, 1932, the plaintiff destroyed the assignment of April 18, 1932, on Bean's representation that the Pettees refused to give any further extension "unless the said profit sharing agreement was destroyed," and in consideration of its destruction "the defendant Bean agreed to pay to the plaintiff fifty per cent of any and all profits which should be realized from any dealings that might be had in the purchase or sale or other dealings with the said Pettee property."

Amendments have long been allowed in equity cases. *Merchants' Bank of Newburyport* v. *Stevenson,* 7 Allen, 489. *Strout* v. *United Shoe Machinery Co.* 215 Mass. 116, 119. The present statute as to amendments is· expressly made applicable to them. G. L. (Ter. Ed.) c. 231, §§ 51, 52, 144. Although the allowance of a legally permissible amendment is discretionary (*Massachusetts Gasoline & Oil Co.* v. *Go-Gas Co.* 267 Mass. 122, 126), questions of discretion are carried up on appeal in equity. *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge, ante,* 146, 151. It does not follow, however, that in deciding them this court will give no weight to the way in which discretion was exercised by the court below. *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge, supra. Hollingsworth & Vose Co.* v. *Foxborough Water Supply District,* 171 Mass.

450, 454. *Bemis* v. *Andrews*, 280 Mass. 409. *Cranston* v. *Hallock*, 281 Mass. 182, 184. The bill to which demurrers were sustained, was the second attempt by the plaintiff to state a case for relief. In that bill, the plaintiff put his case on a ground which, he thought, would give him seventy per cent of the profits, and suppressed facts which would have reduced his claim to fifty per cent. When that attempt failed, he sought to set forth something different which he now asserts to be the real truth. We cannot say that the discretion of the Superior Court was wrongly exercised in denying the motion to amend. *Reno* v. *Cotter*, 236 Mass. 556, 563; *S. C.* 239 Mass. 581, 583. *Knox* v. *Springfield*, 273 Mass. 109. Moreover, the motion to amend was filed more than ten days after the sustaining of the demurrers, and under Rule 23 of the Superior Court (1932), that court was not required to consider it, unless leave to file it had been given, which does not appear. See *Kaufman* v. *Buckley, ante,* 83.

> *Interlocutory decrees affirmed.*
> *Final decree affirmed with costs.*