CHARLES P. ABBOTT *vs.* WILLIAM K. BEAN & others.

Suffolk.    October 9, 1935. — September 9, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Res Judicata. Equity Pleading and Practice*, Demurrer, Report. *Evidence*, Presumptions and burden of proof. *Trust*, Constructive. *Contract*, Validity, Assignment, Option, Construction. *Agency*, Agent's duty of fidelity, Termination. *Assignment. Deceit. Fiduciary. Estoppel.*

After the sustaining of a demurrer based on the merits of a bill in equity and the denial of a motion to amend by the filing of a substitute bill, a decree dismissing the bill was not *res judicata* which would bar maintenance of a subsequent suit between the same parties to enforce the same cause of action if the facts averred in the first bill were not substantially the same as those averred in the second.

After an agent, employed by his principal to procure an option for the purchase of certain real estate, had procured the option in the name of a third party who had assigned it to the agent, and then the agent by an instrument in writing and under seal had assigned to the principal a percentage "of the net profits earned . . . or realized out of and from said" option, the principal, by indorsing on such instrument under seal his assent to the terms of the option and the assignment thereof, accepted such instrument as performance by the agent and as defining the principal's rights under the option, which rights in the circumstances were not added to by statements made by the agent previous to or after the execution of that instrument that he "would obtain" extensions of the option.

Where an agent, employed to procure an option to buy real estate, with the assent of his principal procured an option in his own name and assigned to the principal a share in the "profits . . . realized . . . from" the option, the agent was under no implied duty to the principal to exercise the option or to procure an extension thereof and his fiduciary duty to the principal ceased when the option expired; thereafter he could properly procure a new option for himself.

False representations do not work an estoppel in favor of one relying thereon unless his reliance results in his being harmed.

On a report by a judge of the Superior Court to this court for determination, before further proceedings in the Superior Court, of the propriety of interlocutory decrees in a suit in equity overruling a plea and demurrer to an amended bill, the propriety of allowing the amendment was not open to the defendant.

BILL IN EQUITY, filed in the Superior Court on March 12, 1934, and afterwards amended.

A plea of *res judicata* and a demurrer were heard by *Weed*, J., and by his order interlocutory decrees were entered overruling both. He then reported the suit to this court for determination of the propriety of those decrees before further proceedings in the Superior Court.

*C. Hamilton*, for the defendants.

*R. B. Owen*, (*A. S. Lawrence* with him,) for the plaintiff.

Field, J. This is a suit in equity. To the bill of complaint as amended the defendants pleaded in bar a prior adjudication of the issues raised thereby in a suit between the same parties on the same cause of action in which these issues were raised or might have been raised and, without waiving such plea, demurred to the amended bill. The case was heard on the plea and the demurrer. The record of the suit in equity of *Abbott* v. *Bean*, in the Superior Court, reported in 285 Mass. 474, was introduced in evidence in support of the plea. No other evidence was introduced. The judge found and ruled "that the cause of action in said earlier case is not the same cause of action which the plaintiff seeks to litigate in the present case and that the issues and cause of action set forth in the present bill have not become *res judicata* because of the decision in the earlier case," and ordered the plea "overruled." The judge also ordered the demurrer overruled. He made a report in these terms: "Being of the opinion that my orders and the interlocutory decrees entered in conformity therewith so affect the merits of the controversy that the matter ought, before further proceedings, to be determined by the Supreme Judicial Court, I report the question for that purpose upon the amended bill of complaint, the defendants' demurrer and plea thereto, and my orders and decrees thereon." The record of the suit of *Abbott* v. *Bean*, above referred to, is incorporated in the report by reference.

First. The plea was overruled rightly.

Obviously the plea was heard not merely on its sufficiency as matter of law but on the truth of the fact therein set forth, and was "overruled" in the sense that it was not sustained but was disproved. See *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 509. Since the plea sets up an

affirmative defence the burden of establishing such defence was on the defendants. *Sandler* v. *Silk*, 292 Mass. 493, 498. The report brings before us all the evidence which was before the trial judge — the record of the previous suit. And it is for us to determine whether by that record the defence is established.

The suits are between the same parties. According to the allegations of the bills they arose out of the same series of transactions, which were in substance as follows: An arrangement was made between the plaintiff and the defendant Bean whereby Bean was to obtain an option for the purchase of certain real estate in Boston. Bean caused to be executed a written agreement dated April 5, 1932, between the owners of the real estate and one Yaffe which in effect gave to Yaffe an option to purchase the real estate for $85,000 expiring July 1, 1932, "unless otherwise agreed upon in writing." This agreement provided that if the premises were taken by eminent domain during the period of the option the vendors should pay to the vendee the damages received over and above the option price fixed thereby and the costs of collection of such damages. Bean obtained from Yaffe an assignment to himself by a written instrument dated April 13, 1932, of Yaffe's "right, title and interest in and to said agreement." Thereafter, on or about April 18, 1932, by a written instrument Bean assigned to the plaintiff "seventy per cent (70%) of the net profits earned and/or realized out of and from said agreement," and the plaintiff indorsed on such instrument his assent to the terms of the option agreement and the assignment thereof. On or before July 1, 1932, Bean advised the plaintiff that he had obtained an extension of the option agreement to September 1, 1932, and thereafter advised the plaintiff that he had obtained a further extension or extensions thereof — according to the bill in the earlier case, "the last extension running to early in October, 1932," and according to the bill in this suit the last extension being "for a period of two months" from September 1, 1932. On July 1, 1932, however, Bean, instead of obtaining an extension of the previous option agreement, entered into an agreement

in writing with the owners of the real estate similar to the option agreement previously obtained which in effect gave him an option to purchase the real estate for $85,000 expiring September 1, 1932, which was later extended to October 14, 1932. Copies of the option agreements and assignments above referred to are attached to the bills. All instruments above described, including the plaintiff's assent indorsed on the assignment of April 18, 1932, purport to have been under seal. The city of Boston on October 1, 1932, made a taking of the real estate in question, awarded the owners the sum of $134,000 and paid the owners in three drafts. These owners, under instructions from Bean, thereafter turned over to the defendant Hamilton, as attorney for Bean, one of these drafts for $46,091.50. The defendant Hamilton exchanged this draft for four "cashier's checks" in the sum of $10,000 each, payable to him, and $6,091.50 in cash and thereafter delivered two of these checks to the defendants George M. Poland and Frederick H. Davis, and two of them to the defendant Francis T. Leahy. The defendant Hamilton has refused upon demand of the plaintiff to pay him the whole or any part of the amount of the draft, and the defendant Bean has refused upon demand of the plaintiff to instruct the defendant Hamilton to pay over his share of the proceeds of the transaction. Though the prayers of the bills are somewhat different the bills in substance seek the same relief, namely, the recovery by the plaintiff of his share of said sum of $46,091.50. In the previous case the defendants Bean and Hamilton demurred on various grounds including want of equity and the defendants Poland, Davis and Leahy answered. Interlocutory decrees were entered sustaining the demurrers generally and denying the plaintiff's motion to amend the bill by substituting a new bill. The proposed substitute bill contained some, but not all, of the allegations contained in the bill in the later suit. Thereafter a final decree was entered dismissing the bill with costs. From these decrees the plaintiff appealed to this court which, by its rescript, ordered the decrees affirmed, and thereafter a final decree was entered dismissing the bill with costs.

There are these differences between the bills of complaint in the two suits: (1) The bill in the earlier suit alleged with respect to the original arrangement between the plaintiff and the defendant Bean that the plaintiff "asked" this defendant "to obtain for him an option to purchase the premises . . . and the defendant Bean agreed to negotiate with the . . . owners for such an option." The bill in the present suit alleges that the plaintiff "employed" this defendant "to obtain for him, the plaintiff, an option to purchase the premises . . . and the defendant Bean agreed to obtain said option and as consideration for the obtaining of the said option and any further activities to be performed by the defendant Bean in connection with any deal or transaction with regard to said premises, it was agreed between the parties that if any profit was realized as a result of the obtaining of said option and/or any deal or transaction with regard to said premises . . . said profits would be divided as follows: 70% to the plaintiff and 30% to the defendant Bean." (2) The bill in the present suit contains allegations not contained in the bill in the earlier suit to the effect (a) that at about the time of the execution of the first option agreement by Bean "the plaintiff informed the defendant Bean that the time limited was too short and the defendant Bean stated to the plaintiff that the owners had informed him that they would be willing to extend the time for a total period of six months from July 1, 1932, said extensions to be for periods of two months each; that he, Bean, would obtain such extensions," (b) that the plaintiff, after the execution of the assignment of April 18, 1932, and prior to July 1, 1932, "called to the attention of the defendant Bean the necessity of securing an extension of said time and Bean stated that he would obtain such extension," and that again prior to September 1, 1932, similar statements were made by the plaintiff and Bean, that when the defendant Bean stated to the plaintiff that he would obtain an extension "he at that time intended not to obtain such extension," (c) that the statements of the defendant Bean that the sellers had executed an extension of the first option agreement to September 1, 1932,

and again for a period of two months thereafter, were false and known by the defendant Bean to be false at the times they were made, and (d) that the statements of Bean after the execution of the assignment of April 18, 1932, and prior to July 1, 1932, were made by him with the intent that the plaintiff should rely thereon, that the plaintiff did rely thereon and as a result of the statements "took no steps on his own behalf to procure either an extension . . . [of the option agreement] or a new agreement with the owners of the property providing for a later time for the transfer of property thereunder and the payment of the consideration; that he took no steps for payment to the owners or to protect himself in other ways, which he was then in a position to do." And there are similar allegations with respect to the later statements.

The decree after rescript in the earlier suit dismissing the bill was a final disposition of that suit. On the doctrine of *res judicata* this decree, though entered upon the sustaining of the demurrers of the defendants Bean and Hamilton, would be a bar to the present suit against these defendants if the suits are for the same cause of action and the demurrers in the earlier suit were based on the merits. Such a decree is as conclusive as one entered after a decision founded on a hearing of the evidence. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 205, and cases cited. *Capaccio* v. *Merrill*, 222 Mass. 308, 310. *Keown* v. *Keown*, 231 Mass. 404, 408. *Rappel* v. *Italian Catholic Cemetery Association*, 259 Mass. 550, 553. *Mezoff* v. *United Kosher Butchers Association, Inc.* 274 Mass. 174, 175. As in the case of a decree founded on evidence (see *Corbett* v. *Craven*, 196 Mass. 319; *E. C. Bowman & Son Co.* v. *Hern*, 239 Mass. 200), the bar of such a decree extends to every issue which in fact was or which in law might have been litigated in the earlier suit. See *Correia* v. *Portuguese Fraternity*, 218 Mass. 305, 307; *Capaccio* v. *Merrill*, 222 Mass. 308, 310; *Northern Pacific Railway* v. *Slaght*, 205 U. S. 122, 130–131. But the doctrine of *res judicata* is not applicable where the demurrer in the earlier suit was sustained on a formal or technical ground. *Foster* v. *The*

*Richard Busteed,* 100 Mass. 409, 412.  *Farnum* v. *Brady,* 269 Mass. 53, 55.  *Wight* v. *Wight,* 272 Mass. 154.

The opinion of this court in the earlier case, though not strictly a part of the record thereof (*Snell* v. *Dwight,* 121 Mass. 348), may be examined to find the ground on which the case was decided.  *Coyle* v. *Taunton Safe Deposit & Trust Co.* 216 Mass. 156, 161.  *Diebold Safe & Lock Co.* v. *Morse,* 234 Mass. 17, 20.  *Radford* v. *Myers,* 231 U. S. 725, 730.  From that opinion (285 Mass. 474, 477–478) it appears that the demurrers were sustained on the following grounds: "If the original procurement of the agreement or option gave the plaintiff any rights in the absence of any allegation of employment or consideration . . . the plaintiff accepted as a definition of his rights the assignment of April 18, 1932.  Thereafter the plaintiff had even greater interest than Bean in carrying out the agreement to buy.  Apparently he did nothing to raise the necessary money, but rested in the hope that a taking would be made before the expiration of the agreement.  It is not alleged that any representations or conduct of Bean caused the plaintiff to omit to raise the purchase price of $85,000 required on July 1, 1932.  On that day the plaintiff's rights expired.  When Bean took a new agreement in his own name on July 1, 1932, Bean was not acting as agent of the plaintiff to negotiate any option.  No fiduciary relation then existed between the plaintiff and Bean.  The alleged misrepresentations of Bean as to the extension of the [first option] agreement . . . were not relied on by the plaintiff to his harm, so far as the bill shows."

It is apparent from a comparison of the bills of complaint in the two suits that both arose out of the same series of transactions and that the objects of both were the same, that is, to establish the right of the plaintiff under an agreement with the defendant Bean to money received by his attorney in his behalf — now in the hands of the other defendants — by virtue of an agreement or option obtained by the defendant Bean for the purchase of certain real estate and the taking of such real estate by eminent domain by the city of Boston and payment therefor — in

substance to impose a constructive trust on such money for the benefit of the plaintiff. The bill in the later suit, however, contains allegations of fact which, as is pointed out in the opinion of this court in the earlier case, were not contained in the bill then before the court. But even if, as we do not decide, the suits were brought for the same cause of action (*Harlow* v. *Bartlett*, 170 Mass. 584, 592, *Hoseason* v. *Keegen*, 178 Mass. 247, *Barnes* v. *Huntley*, 188 Mass. 274, *Newhall* v. *Enterprise Mining Co.* 205 Mass. 585, *Mackintosh* v. *Chambers*, 285 Mass. 594, 596–597) it does not follow that the decree in the earlier suit is a bar to the present suit. Though it does not appear from the opinion of the court in the earlier case that the bill in that suit, if it had contained the allegations referred to in the opinion as absent from the bill, would have stated a cause of action, it is apparent from that opinion that the decree in the earlier suit was a decision that the bill of complaint therein was insufficient as matter of substance in that it lacked these allegations. That decree in effect was a decision that the facts which could be shown under the bill would not entitle the plaintiff to relief. In that sense it was a decision on the merits. But it was not a decision on the merits of the plaintiff's cause of action considered at large. Such a decree entered on the sustaining of a demurrer — in the absence, as here, of leave given to the plaintiff to amend his bill and refusal by him to do so — is a decision only on the merits of the case as stated by the bill and is not a bar, on the doctrine of *res judicata*, to another suit brought for the same cause of action in which the bill alleges material facts which could not have been shown under the bill in the earlier suit. The principle that a plaintiff must bring forward at once all the grounds to support his suit (see *Hoseason* v. *Keegen*, 178 Mass. 247, 251; *Barnes* v. *Huntley*, 188 Mass. 274) does not go so far as to prevent the plaintiff's bringing such a new suit in these circumstances. The estoppel of the decree in the earlier suit extends only to issues raised by the pleadings therein. *Wilbur* v. *Gilmore*, 21 Pick. 250, 253. *Correia* v. *Portuguese Fraternity*, 218 Mass. 305, 307. *Capaccio* v.

*Merrill,* 222 Mass. 308.   *Sandler* v. *Silk,* 292 Mass. 493, 498, and cases cited.   *Gould* v. *Evansville & Crawfordsville Railroad,* 91 U. S. 526, 534.   *Wiggins Ferry Co.* v. *Ohio & Mississippi Railway,* 142 U. S. 396, 410.   *Northern Pacific Railway* v. *Slaght,* 205 U. S. 122, 132–133.   Freeman on Judgments (5th ed.), §§ 745–748.   And the references by this court in the opinion in the earlier case (see *Abbott* v. *Bean,* 285 Mass. 474, 477–478) to the absence from the bill then under consideration of allegations of certain facts alleged by the present bill are such as to show that the decision there made was not a decision on the merits of a case in which these facts are alleged.   Compare *Massachusetts Gasoline & Oil Co.* v. *Go-Gas Co.* 267 Mass. 122, 127; *Franklin* v. *North Weymouth Cooperative Bank,* 283 Mass. 275, 279.   The decree in the earlier suit, therefore, is not a bar to the present suit.

Second.   The demurrer should have been sustained.

The demurrer purports to state sixty-two grounds of demurrer, but the defendants' argument is based on three fundamental grounds, (a) that the bill does not state a case for equitable relief, (b) that the plaintiff has an adequate remedy at law, and (c) that the bill is defective in form in violation of G. L. (Ter. Ed.) c. 214, § 12.

The plaintiff contends in substance that the bill states a case for equitable relief by imposing a constructive trust for the benefit of the plaintiff on the money in the hands of the defendants other than the defendant Bean.   The bill does not state such a case.

On the allegations contained in the bill, as to employment of the defendant Bean by the plaintiff to obtain an option to purchase the premises in question, an agreement of this defendant to obtain such an option, and an agreement of the plaintiff and this defendant with respect to the consideration which this defendant was to receive for his services, Bean became the agent of the plaintiff to obtain such an option.   He obtained such an option by virtue of the agreement between Yaffe and the owners of the premises and the assignment of April 13, 1932, from Yaffe to Bean of his "right, title and interest in and to said agreement."   (No

question of the validity of this assignment is raised.) Bean took this assignment in his own name. Whether by doing so he violated his duty as agent of the plaintiff, and whether, apart from the assignment of April 18, 1932, the plaintiff could have compelled Bean to hold such option agreement in trust for the plaintiff or assign it to him need not be considered, for the plaintiff by accepting this assignment from Bean of an interest in "the net profits earned and/or realized out of and from" this option agreement, and expressly assenting to the terms of the option agreement and of the assignment thereof from Yaffe to Bean, waived any such violation and accepted the assignment of April 18, 1932, from Bean to the plaintiff as a definition of his rights under the option agreement. In this respect the plaintiff's situation is not different from his situation in the earlier case. See *Abbott v. Bean,* 285 Mass. 474, 477.

Though the plaintiff alleges that before the assignment of April 18, 1932, Bean stated to him that he "would obtain" extensions of the time for exercising the option to purchase the premises in question under the option agreement and prior to July 1, 1932, and again prior to September 1, 1932, made a similar statement and alleges further with respect to some or all of these statements that at the time Bean made the statements he "intended not to obtain such extension," the plaintiff does not seek to set aside this assignment but relies upon it. See *Kaufman v. Buckley,* 285 Mass. 83, 85. Moreover, the facts alleged would not warrant setting aside this assignment. Bean's statements were promissory and were not incorporated in the written assignment under seal. Such statements were not false representations of his intention with reference to "the contractual relations provided for by the agreement entered into." *Loughery v. Central Trust Co.* 258 Mass. 172, 178. *Ernest F. Carlson Co. v. Fred T. Ley & Co. Inc.* 269 Mass. 272, 278. In this respect the statements are unlike the statements considered in *Feldman v. Witmark,* 254 Mass. 480. And the later statements were made after the assignment of April 18, 1932, from Bean to the plaintiff. Furthermore, the facts alleged do not show that any of Bean's promissory statements

herein referred to constituted a part of a binding agreement collateral or subsequent to the assignment. The rights of the plaintiff under this assignment from Bean of an interest in the profits earned or realized under the option agreement of April 5, 1932 — in the absence of fraud on the part of the defendant Bean — expired on July 1, 1932, when the option agreement expired, without the option to purchase the premises in question having been exercised — as was decided in the earlier case. After the expiration of the option agreement there was no fiduciary relation between Bean and the plaintiff. *Abbott* v. *Bean*, 285 Mass. 474, 478. Doubtless Bean by his assignment to the plaintiff impliedly agreed to do nothing to defeat or impair the value of the assignment. Am. Law Inst. Restatement: Contracts, § 175. See *Eaton* v. *Mellus*, 7 Gray, 566. But he did not by the assignment expressly or impliedly agree to exercise the option to purchase the premises in question under the option agreement of April 5, 1932, or to obtain an extension of such option agreement. This option agreement, however, according to its terms, expired on July 1, 1932, "unless otherwise agreed upon in writing." And the assignment to the plaintiff of prospective profits under such agreement must be interpreted as including profits earned or realized under that agreement extended in accordance with its terms, either expressly or in substance. See *Robinson* v. *Jewett*, 116 N. Y. 40, 51. But there was no such extension unless by the similar option agreement of July 1, 1932 — later extended to October 14, 1932 — between the owners of the premises and Bean. This option agreement, however, not only did not purport to be an extension of the first option agreement, but — as was decided in the earlier case — was not obtained by Bean until after the first option agreement and the plaintiff's rights thereunder had expired. The plaintiff, therefore, must prevail, if at all, on the ground that Bean is estopped by his false representations to deny that the option agreement of July 1, 1932, was an extension of the first option agreement.

The facts alleged do not show such an estoppel. It is essential to an estoppel based on false representations that

reliance on such representations results in harm to the person relying thereon. *McLearn* v. *Hill*, 276 Mass. 519, 524. Where, as here, the plaintiff relies on his having been "put' to rest" by false representations it must appear also that he was "damaged by being put to rest." See *Simm* v. *Anglo-American Telegraph Co.* 5 Q. B. D. 188, 211. The facts alleged do not show that the plaintiff was so damaged by the false representations of Bean. The assignment of April 18, 1932, from Bean to the plaintiff was not an assignment of the option agreement of April 5, 1932, either wholly or partially. It was, at most, an assignment of an undivided interest in profits earned or realized under that option agreement. See *Commercial Casualty Ins. Co.* v. *Murphy*, 282 Mass. 100, 106–107. Bean did not by such assignment assign to the plaintiff the right to exercise the option to purchase the premises in question under the option agreement or the privilege of procuring by agreement with the owners of these premises an extension of such option agreement. See *Chapin* v. *Pike*, 184 Mass. 184, 186. Such right and privilege remained in Bean who was under no duty to the plaintiff to exercise them. Consequently the plaintiff suffered no harm because he in reliance on Bean's false representations that the option agreement had been extended "took no steps" — which, on the facts alleged, he had no right to take — to exercise the option thereunder by paying the agreed price to the owners of the premises though he was in a position to do so, or to procure an extension of such option agreement prior to the expiration of the option agreement on July 1, 1932. Even if no false representations had been made by Bean, the plaintiff could have taken no effective steps to these ends in the absence of some further agreement between him and Bean which Bean was not bound to make nor, so far as is alleged, was willing to make. See *New York Life Ins. Co.* v. *Silverstein*, 53 Fed. (2d) 986, 990. Though it was said in the earlier case that it was not "alleged that any representations or conduct of Bean caused the plaintiff to omit to raise the purchase price of $85,000 required on July 1, 1932," it was not decided in that case that the plaintiff had any right to exercise the option. See *Abbott*

v. *Bean*, 285 Mass. 474, 477. The plaintiff, moreover, stands no better by reason of the allegation in the bill that in reliance on the false representations he "took no steps . . . to procure . . . a new agreement with the owners of the property providing for a later time" for the exercise of the option. The plaintiff had no greater right under the assignment to him to procure what would be in effect an extension of the option agreement by such a new agreement than to procure an extension thereof in accordance with its terms. And so far as a new agreement independent of the option agreement is concerned, the plaintiff was not in a more favorable position than a stranger to the original transaction. It is wholly speculative whether if there had been no false representations the plaintiff could have procured a new agreement with the owners of the property. Estoppel cannot be based on harm so speculative in its nature. See *Bradley* v. *Fuller*, 118 Mass. 239, 241; *Dudley* v. *Briggs*, 141 Mass. 582; *Baker* v. *Seavey*, 163 Mass. 522, 526–527. And the allegation that the plaintiff in reliance on the false representations "took no steps to . . . protect himself in other ways in which he was then in a position to do" is too indefinite to support an estoppel. On the allegations of the bill the plaintiff lost no right or interest, legal or equitable, which he could have protected, even if there had been no false representation, beyond the problematical opportunity to enter into a new transaction independent of the original transaction. "But the law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." *Tracy* v. *Lincoln*, 145 Mass. 357, 360. *McLearn* v. *Hill*, 276 Mass. 519, 524.

In view of the conclusion reached it is not necessary to consider the other grounds of demurrer.

*Third.* The plea and the demurrer, already considered, were directed to an "amended bill of complaint." The defendants contend, however, that the trial judge was in error in permitting this "amended bill of complaint" to be filed, in allowing it as an amendment to the bill previously filed, and in denying the motion of the defendants to strike

the "amended bill of complaint" from the files. No such questions are reported and they are not necessarily involved in the questions reported. The trial judge had power to act as he did. G. L. (Ter. Ed.) c. 231, §§ 51, 144. *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 6. The case does not fall within *Bowen* v. *Fairfield,* 260 Mass. 38, 40–41. And even if his actions were erroneous, as we do not imply (see *Massachusetts Gasoline & Oil Co.* v. *Go-Gas Co.* 267 Mass. 122, 126), the amended bill and the plea and the demurrer thereto were before him for decision and, in his discretion, for report. He reported only the questions raised by such plea and demurrer. See G. L. (Ter. Ed.) c. 214, § 30. And those questions only are before us for consideration on the report. See *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384; *Cedar* v. *Superior Credit Corp.* 276 Mass. 197, 200–201. The defendants urge also that in view of the history of the litigation as disclosed by the record and the record of the earlier case incorporated therein this court should make an order for the final disposition of this case. Whatever power we may have to make such an order, we think that our order should be limited to the disposition of the plea and the demurrer.

It follows that the order overruling the plea must be affirmed, but that the order overruling the demurrer must be reversed and an interlocutory decree entered sustaining the demurrer.

*Ordered accordingly.*