EFSTRATEOS G. TOURLES *vs.* WILLIAM H. GROGAN.

Franklin. September 18, 1940. — October 29, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Way*, Private: abandonment. *Estoppel.*

The mere fact, that a mortgagee, who did not participate in his mortgagor's releasing a right of way covered by the mortgage and acquiring a substitute right of way, after foreclosure of the mortgage accepted from his mortgagor a conveyance of the new right of way so acquired, did not require a conclusion that he had abandoned the old right of way or was estopped to rely on it.

BILL IN EQUITY, filed in the Superior Court on September 2, 1938, to require the defendant to deliver to the plaintiff a release of a certain right of way.

The suit was heard by *Collins*, J.

*W. A. Davenport*, for the plaintiff.

*S. Blassberg*, for the defendant, submitted a brief.

Cox, J. This bill in equity, filed on September 2, 1938, was referred to a master and the plaintiff appealed from the final decree dismissing the bill.

Prior to 1920, one Delongechamps owned a farm fronting on the west side of a road, and the defendant owned some land with buildings thereon at or near the southwest corner of that farm and running to the west, "not being visible from said road." On December 1, 1920, Delongechamps conveyed a right of way over his land to the road to the defendant. This conveyance was duly recorded. In 1926 Delongechamps conveyed his farm to the plaintiff, but his deed, which was recorded, contained no mention of the right of way previously conveyed to the defendant. In 1928 the defendant conveyed his land, together with said right of way, to one LaPalm, and at the same time LaPalm mortgaged "the same land and said right of way" to the defendant. Both deed and mortgage were recorded on September 6, 1928. On November 24, 1928, LaPalm con-

veyed to the plaintiff "all his right, title and interest in said right of way, then being subject to his mortgagee's rights as aforesaid," and at the same time one Cote, who owned land on the west side of said road adjoining land of the plaintiff on the south, conveyed another right of way along his north line from the road to a corner of the plaintiff's land to LaPalm. Both instruments were recorded on December 5, 1928. On April 26, 1930, the defendant foreclosed his mortgage and became the owner of the premises therein described. Shortly after the foreclosure, LaPalm "without other payment," conveyed the "so called" Cote right of way to the defendant. These instruments of transfer were recorded. In 1928 the plaintiff saw the defendant using the original right of way and eventually brought suit against Delongechamps "under the warranty on account of . . . [the] encumbrance." "Shortly thereafter, . . . the said second right . . . of way appears to have been given in settlement, by the participating parties, and as a substitute for the earlier one over Delongechamps's land, which, in turn, was released by LaPalm, and the action abandoned." LaPalm, by this settlement, acquired a "new, wider and more direct outlet from his land to the road and the plaintiff, as he thought, an extinguishment of the annoying encumbrance over his land. This Cote right of way, so called, for the most part, is much superior to the earlier one, but, in time of high water in the spring, is subject to troublesome overflows, a difficulty, in present condition, not incident to the said first right of way which, throughout, is largely over higher land. Nevertheless, the parties to the lawsuit, to the new right of way, and to the instrument purporting to release said first right of way, were then well satisfied that the problem of that encumbrance on the plaintiff's farm was forever settled. However, although it is not too clear on the evidence just when the defendant first learned of the said settlement or of the giving of the new right of way, it is certain there is no evidence shown that he was any party to same or that he did anything, intentionally, to subordinate his right of way under his existing mortgage, at any time prior to the foreclosure or since."

The defendant has continued to own the premises that he acquired under the foreclosure. He went over the so called Cote right of way before the foreclosure, and he also went over the original right of way "a few times, presumably in time of high water, since. Once, especially, in 1932, he remembered . . . he could not go throughout same to the road, however, as some of the easterly end of the course was obstructed with remains of structures."

The evidence is not reported, and the master's findings of fact are conclusive, unless it appears from the report itself that they are plainly wrong. This court must decide the suit upon the report in accordance with its own judgment. *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90, and cases cited.

The plaintiff rightly does not contend that title to the first right of way is not in the defendant. *Atkins* v. *Bordman,* 2 Met. 457, 462, 463. *Les* v. *Alibozek,* 269 Mass. 153, 157. In fact, the plaintiff asks in his bill that the defendant be ordered to execute and deliver to him a release of the right of way over his land.

But the plaintiff does contend that the defendant should be ordered to relinquish his title to the original right of way for the reasons that he has accepted another; that, in effect, he has abandoned the original right of way; that by his acceptance of the deed to the new right of way, by his nonuser of the old one, by his failure to object to the "plaintiff's obstruction" of the old one, and by his failure to use it, he must be found to have abandoned the first right of way, to have been guilty of laches and to be estopped to claim any rights in the original way.

We are of opinion that the bill was rightly dismissed. The master expressly found that the defendant did nothing intentionally to "subordinate" his right of way under his mortgage, at any time prior to the foreclosure or since. This amounts to a finding that there has been no abandonment of this right of way. To show abandonment, any act relied upon must either be accompanied by evidence of intention, or be in its nature such as necessarily to show an intention to abandon. *New England Structural Co.* v.

*Everett Distilling Co.* 189 Mass. 145, 154. It is unnecessary to consider the precise point of nonuser in view of the master's findings. See *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145, 154–155; *Arcisz* v. *Pietrowski,* 268 Mass. 140, 147; *Les* v. *Alibozek,* 269 Mass. 153, 157–158; *Dyer* v. *Siano,* 298 Mass. 537, 541.

Laches is not pleaded, but, even if it were (*Stewart* v. *Joyce,* 201 Mass. 301, 307), we find nothing in the findings of the master that would justify a finding of laches on the part of the defendant. See *Alvord* v. *Bicknell,* 280 Mass. 567, 572. The case at bar is distinguishable from *Snow* v. *Hutchins,* 160 Mass. 111.

The doctrine of estoppel is not applicable. See *Abbott* v. *Bean,* 295 Mass. 268, 280. The defendant had nothing to do with the difficulty that arose over the failure of Delongechamps to mention the original right of way in his deed to the plaintiff, or with the settlement of this difficulty by the parties concerned. It is true that, after the foreclosure, the defendant obtained a deed of the so called Cote right of way. But it does not appear that the defendant has done anything that has induced others to do something different from what otherwise they would have done, and which has resulted to their harm. *Augello* v. *Hanover Trust Co.* 253 Mass. 160, 167. *Abbott* v. *Bean,* 295 Mass. 268, 280. The case is distinguishable from *Lund* v. *Cox,* 281 Mass. 484, 492.

*Decree affirmed with costs.*